# MORGAN v. WABASH RAILROAD COMPANY, Appellant.

### In Banc, December 18, 1900.

1. **Negligence:** CONTRIBUTORY NEGLIGENCE: LIABILITY OF ROAD. Although plaintiff's husband may have been guilty of negligence which contributed to his death by a railroad train, the company is liable if it failed to use the means at its hand to save him when by the exercise of ordinary care it would have discovered his peril in time to have done so.

2. ————: ————: ————: PEDESTRIAN NOT SEEN. The railroad track between a tie yard and the town had for twenty-five years been constantly used by the town people and people residing in the neighborhood as a footpath, and steps had been constructed over the railroad fence to the town and also at the tie yard for the convenience of pedestrians on the track. While walking on the track between these two points, about a half mile from the depot, plaintiff's husband, sixty-three years old, his hearing and sight unimpaired, but unconscious and unmindful of danger, was killed by a special train, consisting of a caboose, engine and tender, running twenty miles an hour. The tender was in front, being wider than the engine, and so piled with coal as to shut out the engineer's and fireman's view of the track. The conductor and brakeman were in the caboose in the rear, closed in. None of the trainmen saw plaintiff's husband on the track or were in a position to see him, or made any effort to see him. The track was straight and the train could not have been stopped in less than 500 feet. Before leaving the depot the engine whistled "off brakes" and the engineer testified that the automatic appliance for ringing the bell was set, but all the other witnesses testify that no bell was rung, or any signal given. No whistle was sounded. *Held,* that the deceased's action was negligent, but defendant's duty not to wantonly, willfully or with gross negligence injure him, did not depend on its servants seeing him in his perilous position before the injury was done, but as its servants neglected to use the means at

their command to see him and prevent the injury, the defendant, under these circumstances, must respond in damages. *Held*, also, that the make-up of the train, the necessity of running it with the tender in front, the impossibility of the engineer and fireman seeing one on the track from their usual positions, created a necessity for placing some one of the crew where he could see.

3. ————: TRESPASSER: USAGE AND CUSTOM. It does not follow because the statute declares one walking on a fenced railroad track to be a trespasser, that every such person is a trespasser. Usage and custom can not repeal a statute, but they may change the condition of the thing on which the statute operates. If a railroad company for more than twenty-five years acquiesced in its track being used as a footpath by the whole community, and permitted steps over its fence to stand as a permanent invitation to them to walk on its track, it can not take refuge behind such statute.

4. ————: ————: AWARE OF PERIL: INSTRUCTION. It is not proper to instruct the jury as to the trainmen's conduct after they became aware that a pedestrian was in a perilous condition on the track, if there was no evidence tending to show that they saw him there. Nor in such case should the jury be told that if the engineer saw him in time to have stopped the train he should have done so. But under the circumstances of this case such instructions were harmless error, as they could not possibly have misled the jury.

PER MARSHALL, J., DISSENTING.

1. Negligence: RECKLESSNESS: MUTUALITY: WANTONNESS. The negligence which caused the injury was mutual, both the pedestrian and the trainmen were equally recklessly negligent, and the negligence of each combined to produce the result, and in such case, there being no wantonness shown the railroad company is not liable for damages.

2. ————: MIXTURE OF WANTONNESS AND NEGLIGENCE IN INSTRUCTION. The elements of wantonness and negligence should not be mixed in the same instruction, and if mixed as to one party they should also be mixed as to the other. An instruction that practically tells the jury that plaintiff's recovery is not barred unless his contributory negligence amounted to wantonness, and that he can recover whether the defendant's action was either negligent or wanton, should not be given.

Morgan v. Wabash Ry. Co.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*George S. Grover* and *G. Pitman Smith* for appellant; *A. H. Waller* and *S. H. Priest* of counsel.

(1) Upon the undisputed facts in this case, the contributory negligence of the deceased was the proximate cause of his death, and, for that reason, the plaintiff is not entitled to recover. Holwerson v. Railroad, 157 Mo. 216, and cases cited. (2) The demurrer to the evidence should have been sustained. Zimmerman v. Railroad, 71 Mo. 476; Williams v. Railroad, 96 Mo. 275; Barker v. Railroad, 98 Mo. 50; Hyde v. Railroad, 110 Mo. 272; Maxey v. Railroad, 113 Mo. 1; Loring v. Railroad, 128 Mo. 349; Railroad v. Jones, 163 Ill. 167. (3) The court gave improper instructions at the request of plaintiff. Price v. Railroad, 72 Mo. 416; Ely v. Railroad, 77 Mo. 34; Haynes v. Trenton, 108 Mo. 132; Holwerson v. Railroad, *supra.* (4) The instructions asked by defendant, and refused by the court, should have been given. Authorities cited, *supra.*

*Norton, Avery & Young* and *J. D. Barnett* for respondent.

(1) The court did not err in overruling the demurrer to the evidence. Guenther v. Railroad, 95 Mo. 286, 108 Mo. 18; Williams v. Railroad, 96 Mo. 275; O'Mellia v. Railroad, 115 Mo. 221; Frick v. Railroad, 75 Mo. 595; Lemay v. Railroad, 105 Mo. 361; Lynch v. Ra'lroad, 111 Mo. 607; Hicks v. Railroad, 65 Mo. 36; Maher v. Railroad, 64 Mo. 267;

Chamberlain v. Railroad, 133 Mo. 587; Sinclair v. Railroad, 133 Mo. 233. (2) The court gave proper instructions at the request of the plaintiff. Authorities cited, *supra*. (3) The court did not err in admitting evidence showing that the point where Morgan was killed was the place where pedestrians for a long time had been used to traveling. Williams v. Railroad, 96 Mo. 275; Lynch v. Railroad, 111 Mo. 607; Chamberlain v. Railroad, 133 Mo. 587; Donohue v. Railroad, 91 Mo. 357; Frick v. Railroad, 75 Mo. 595; Kelly v. Railroad, 75 Mo. 138.

*George S. Grover* for appellant in reply; *A. H. Waller* of counsel.

(1) Respondent's contention is, that by reason of the fact that pedestrians for a long period of time prior to the death of Morgan, had been in the habit of using the railroad track at the point where Morgan was so killed, and east and west thereof from Wright City to the Stringtown crossing, as a footpath in going to and from Wright City, and that many persons were in the habit of so trespassing upon said track, a duty was raised on the part of defendant to keep a lookout for deceased at said point, and respondent's counsel strenuously insist that their contention is sustained by: Harlan v. Railroad, 65 Mo. 24; Frick v. Railroad, 75 Mo. 595; Guenther v. Railroad, 95 Mo. 286; Lynch v. Railroad, 111 Mo. 607; Chamberlain v. Railroad, 133 Mo. 587; and other cases cited in their brief. None of the cases cited in respondent's brief wherein the injured party was a trespasser turned on the point that is here under consideration, and no such rule was announced in express terms in any such case. There is some *obiter dicta,* however, to be found in these cases, and notably in Lynch v. Railroad, *supra,* which seems to give color to re-

spondent's contention.    It will be observed that the duty im-
posed in this case, is the exercise of reasonable care and dili-
gence to discover the danger.    It does not in express terms, nor
by any fair implication, hold that the company · is in duty
bound to keep a lookout for the trespassers upon the track.
The Harlan case was decided at the April term of the court,
1877.    Harlan, however, met his death in November, 1872,
before any statute was enacted relating to trespassers on rail-
road tracks.    The statute seems to have been overlooked in the
Frick case and it was therefore not distinguished from the
Harlan case, although this might very properly have been done.
(2)    We further submit that deceased was guilty of such
contributory negligence, under the facts of this case, as will
bar a recovery, and for this reason also, defendant's demurrer
to the evidence should have been sustained.    Maxey v. Rail-
road, 113 Mo. 11; Kelsay v. Railroad, 129 Mo. 374.


In DIVISION ONE.


VALLIANT, J.—Plaintiff's husband was run over and
killed by a train on defendant's road near Wright City, in
Warren county, April 9, 1897, and this suit is to recover the
damages allowed by the statute in such case when the killing
is the result of defendant's negligence.

The petition stated that plaintiff's husband was walking
eastward on the railroad track about a quarter of a mile east
of Wright City, where the track was level and straight for a
long distance and which for many years pedestrians to and
from that town had been accustomed to use as a road and
footpath by the forbearance and tacit consent of the defendant;
that the killing of plaintiff's husband was the direct result of
the negligent, careless and reckless manner in which the train
was run, in this:

"That after defendant's employees in charge of and operating said train seeing, or by the exercise of reasonable care and diligence, had they not been reckless in operating said train, could have seen, the dangerous position in which plaintiff's deceased husband, Caleb M. Morgan, was situated, and seeing, or by the exercise of reasonable care and diligence, if said train had not been recklessly operated by defendant's agents and servants in charge thereof, could have seen, the imminent peril in which her said husband was placed, and that the deceased was unaware of the near and dangerous approach of said train, negligently failed to sound the usual and ordinary signal in time to avert the injury herein complained of, and in fact did not at any time before the injury to and death of her said husband, either ring the bell, sound the whistle, or give any other signal by which her said husband might be warned of the near and dangerous approach of said train, and negligently failed and neglected to use the brakes or other appliances provided for stopping said train made up as aforesaid, and negligently failed to use the appliances provided and at hand for putting said train under control and stopping same before it struck and killed her husband, but, on the contrary thereof, recklessly, negligently, willfully and wantonly ran its said train against the plaintiff's said husband, so mutilating, wounding and bruising him that from the effects thereof he then and there immediately died."

The answer admitted that defendant was a railroad corporation, etc., and that plaintiff's husband was killed by one of its trains at the time and place named, denied all other allegations of the petition, and averred that his death was due solely to his own negligence in then and there walking on the track without looking or listening when by so doing he could have heard the train in time. Reply, general denial.

Briefly stated, the material facts brought out at the trial

were as follows: Wright City is a village of about 450 inhabitants; the country immediately around it is thickly settled. There is a curve in the railroad track just east of the depot, which obstructs the view, but after passing around it, the track is straight and the view is clear for a distance of 1,300 feet down to the Kennedy crossing, where the accident occurred, and so on to the Stringtown road crossing, a quarter of a mile or so further east. It is about half a mile from the depot to the Kennedy crossing.

The Kennedy crossing is a private farm crossing, the Stringtown road is a county road crossing the railroad. Near the Stringtown road crossing is a tie yard where for eight or ten years a considerable number of men engaged in that business have delivered ties to the railroad. Wright City is the usual trading point for these tie men, and they usually walk on the railroad track in passing between the tie yard and the town. The railroad track at this point is fenced as the law requires, and there is a public road running parallel to the railroad on the south side, though it varies in distance from the railroad, being 200 yards from it at the Kennedy crossing. For twenty-five years or more the railroad track from Wright City to Stringtown road crossing had been constantly used by the town people and people residing in the neighborhood, men, women and children, as a footpath in perference to the county road, and steps had been constructed over the railroad fence in the town, and also near the Stringtown road crossing, for the convenience of pedestrians going upon the track. Morgan, the plaintiff's husband, was a farmer living about five miles northeast of Wright City and engaged also in the tie business, and was accustomed to pass to and from Wright City and the Stringtown road by walking along the railroad track. On the day of the accident he was walking on the track going east towards the Stringtown road crossing, when he was struck and

killed by a train going in the same direction.   He was sixty-
three years old, his senses of hearing and seeing unimpaired,
but he apparently did not hear the train, did not look around
nor see it until it struck him.   There was no one but the train
crew on the train, engineer, fireman, brakeman and conductor,
neither of whom saw Morgan and they did not know that an
accident occurred until they were afterwards informed of it.
It had been a train carrying seventeen empty freight cars,
which came from the east to Wright City.   There it left the
freight cars, and the train then reduced to engine, tender and
caboose, was returning east.   It was a special train, not run-
ning on schedule time.   There being no turn-table at Wright
City, the engine had to run backwards on its return, pushing
the tender in front, and drawing the caboose after it.   The
conductor and brakeman were in the caboose, from which they
had no view of the track.   The tender was wider than the en-
gine, and was so loaded with coal as to prevent the engineer and
fireman from seeing the track ahead of them, and they did
not see Morgan at all, either before or after the accident, or
know that an accident had occurred.   The train was running
at the time about twenty-five miles an hour.   It was down
grade, and could not have been stopped in less space than 500
feet.   Before leaving the depot at Wright City, the engineer
whistled off brakes by giving two blasts of the whistle.   There
was an automatic appliance for ringing the bell, and the engi-
neer, who was called by plaintiff as a witness, testified that he
set it ringing when he pulled out from the depot and did not
stop it until the train had passed the Stringtown road cross-
ing; the other witnesses for plaintiff testified that the bell was
not ringing.   There was no whistle blown after starting.   The
only evidence was that introduced by the plaintiff, except that
the defendant introduced some photographs of the railroad
track and its immediate surroundings at the points referred to

in the evidence.     The defendant asked but one instruction, which was asked at the close of plaintiff's evidence, and again at the close of the whole case, and which was in the nature of a demurrer to the evidence, and was by the court refused, and defendant duly excepted.     At the request of the plaintiff the court gave the following instructions:

"1.     The court instructs the jury that under the law, if they find for plaintiff, their verdict must be for five thousand dollars, and can not be for more nor less than that sum, if for the plaintiff.

"2.     The court instructs the jury that if they shall believe from the evidence that Caleb M. Morgan, at the time he was killed, was the husband of plaintiff, and that this suit was brought within six months after his death, and shall further find from the evidence that the place on defendant's track where deceased was struck by defendant's train, was near a private crossing on defendant's track, used as a private or farm crossing over said track, and that the track, at the time, was in such a condition and position, for a distance of eight hundred feet or more west from the point of the catastrophe, that a person walking thereon could have been seen by the persons in charge of said train, had they been at their proper posts, and on the lookout ahead of them, and that said track, at the place where Morgan was killed, and for some distance west thereof had, for years prior thereto, and was at about the time said Morgan was struck and killed, frequently used by pedestrians in going to and from Wright City and the Stringtown crossing and points between the said places; and that Caleb M. Morgan, while walking upon defendant's track, became in imminent peril of being struck by defendant's train, and defendant's employees in charge of said train became aware of his peril of being struck in time to have enabled them by the exercise of ordinary care, to have stopped said train and to have averted

the injury to said deceased, or if the jury believe from the
evidence that said employees in charge of said train, by the
exercise of ordinary care, could have become aware of his peril
in time to have stopped said train and to have averted said in-
jury to said deceased, and they failed to exercise such care and
stop said train, and that by reason of such failure to exercise
such ordinary care, the said train was not stopped, and said
Morgan was struck and killed, then the jury must find for the
plaintiff, though the jury may find that the deceased, Caleb M.
Morgan, was guilty of negligence in walking on defendant's
track at the time. And by ordinary care is meant such care
as an ordinarily careful and prudent person would exercise
under the same or similar circumstances.

"3. The court instructs the jury that the defendant rail-
road company is not bound to whistle or ring the engine bell
when approaching a private or farm crossing, and, further,
that said defendant railroad company may regulate the speed
of trains approaching private crossings as it may desire by its
own regulations, but, nevertheless, the jury are instructed that
said defendant railroad company knowing that said private
crossings are likely to be used by persons passing over and upon
the railroad track, are bound, when approaching said crossings,
to keep a proper lookout and to use all reasonable precautions
when approaching said private or farm crossing, to prevent in-
jury to any one on or approaching such crossings.

"4. If the jury believe from the evidence that at the
point on the track of the defendant where plaintiff's husband
was killed, said track was clear and unobstructed and suffi-
ciently straight to permit a plain view along the track from
any approaching train; and if the jury believe further, that at
said point where said deceased was struck by the train, the
roadbed of the defendant, both east and west of said spot, was
at that time used, and had for a long period of time prior

thereto been used, with the knowledge of the defendant, its servants and employees, by pedestrians as a passway leading to and from the village of Wright City, then it was the duty of the employees of the defendant in charge of the train, when approaching such portion of the roadbed of defendant as was used as aforesaid as a passway, to keep a lookout for persons and to ascertain that the track was clear.

"5. And if the jury further believe from the evidence that the engineer or fireman or other employees in charge of the train which struck the deceased saw the deceased on the track, or might have seen him by the exercise of ordinary care on their part; and if the jury further believe that the deceased was unaware of his peril and was proceeding along the railroad track, unconscious of the approaching train; then it was the duty of such engineer or fireman or employee of the defendant, so observing the deceased, to give him proper warning of the approaching train, and it was his duty to give such warning by such a signal as was within his power, as could be likely heard and would be likely heard by any person possessing, in an ordinary degree, the sense of hearing in the position the deceased occupied. And if such signal was given and unheeded, then it was the duty of such employee to stop said train, provided said train could be stopped with safety to those on board of the same; and unless, at the time of the injury, the employees of the defendant in charge of said train used the means at their command to provide for the safety of the deceased, after they discovered his imminent peril, the jury may find a verdict for the plaintiff in this case, although they may believe that the plaintiff was guilty of negligence in being upon the track of the defendant and in permitting himself to be inattentive to the dangers surrounding him."

To these instructions defendant duly excepted. There was a verdict for plaintiff for $5,000, motion for new trial, which was overruled, and defendant appealed.

I.   Appellant's first proposition is that the court erred in refusing its instruction in the nature of a demurrer to the evidence.   This is based on two grounds:   First, the plaintiff's husband was guilty of negligence contributing to the accident; second, he was a mere trespasser on the railroad track and the defendant owed him no duty to be on the lookout for him.

It will simplify our task if we avoid the discussion of legal propositions not in the case.   There can be no doubt under the evidence that the death of the plaintiff's husband resulted from the negligence of the defendant's servants in charge of the train, and the negligence of the deceased himself contributing thereto.   The train crew started out from the station with the conductor and brakeman in the caboose in the rear, where they could not see the track in front, and the engineer and fireman were behind the tender, upon which coal was so piled up that they could not see ahead of them, or as the counsel for appellant say in their brief:   "The tender was wider than the engine, and being filled with coal effectually shut off the engineer's and fireman's view of the track to the east."   There was no excuse for that condition.   True, there was no turn-table at the station, and that fact made the running of the engine backwards a necessity, but piling the coal up so as to shut out the engineer's view of the track, and locating the crew so that not one of them could see what they were running into, was a mere convenience.   If, after the conductor and brakeman had closed in the caboose, and the engineer had started the train, he and the fireman had blindfolded themselves, they would not thereby have been rendered less capable of guarding against such accident than they were when in the condition as shown in this evidence.

And, on the other hand, the deceased, a man in the full possession of his senses, selecting for his own convenience the dangerous path in the railroad track where he was bound to

know that a train was liable to pass at any time, and as liable to come from one direction as the other, walking leisurely and unconcernedly, without turning his head to look, and apparently allowing his meditation to so close his ears that the ordinary rumble of the train and the sound of the bell (if the bell was ringing) were not heard, was certainly guilty of negligence, but for which, even with the negligence of the defendant's servants, he would not have been killed.

We will therefore not now stop to discuss the law of contributory negligence; that law has been discussed from almost every conceivable point of view in our reports.    But conceding the contributory negligence of the plaintiff's husband, we advance to the consideration of the question, is the defendant liable upon the ground that it failed to use the means at its hand to save the man when by the exercise of ordinary care it would have discovered his peril in time to have done so? The answer of the appellant to this question is, that its servants did not actually see the man, and that as he was a trespasser on its track, they owed him no duty to be on the lookout for him; and section 2611, Revised Statutes 1889, is quoted as authority for so designating him.    But we can not dismiss the subject by simply calling him a trespasser, for even a trespasser is not entirely beyond the pale of the law.

In a recent case the writer of this opinion took occasion to express his individual inability to appreciate the reasoning upon which is founded the so-called humane doctrine, that is, the doctrine permitting, under certain circumstances, a recovery on the ground of negligence when the party has himself been guilty of contributory negligence.    [Schmidt v. Railroad, 149 Mo. 269, l. c. 285-6.]    But at the same time he recognized that such is the law, too firmly settled to be now contested, and that it stands on ample authority, if on nothing else, not only in this jurisdiction but elsewhere.

The aim of all law is the attainment of right and justice. Experience has shown that this is best accomplished by the laying down of certain general principles by which all conduct must be adjudged rather than by leaving each case to make its own law. Yet with the utmost care and the light of experience it is found that human wisdom is finite, that what we sometimes call the result of the perfection of reason is still imperfect, and we are compelled to own that exceptions must be made to our best reasoned rules.

The most satisfactory statement of the doctrine which flows from the exception to the rule of contributory negligence, and the ground upon which it stands, that the writer has seen, is in Kellny v. Railroad, 101 Mo. 67, 1. c. 74-5, wherein this court, per BRACE, J., said: "We know of but one exception to the rule that where an injury is the product of the joint concurring acts of negligence of both plaintiff and defendant the plaintiff can not recover, and that is an exception made, on grounds of public policy and in the interest of humanity, to prevent and restrain as far as may be a wilful, 'reckless or wanton disregard of human life or limb, or property, *under any circumstances,* and that is when the injury was produced by the concurrent negligent acts of both plaintiff and defendant, yet if the defendant, before the injury, discovered or by the exercise of ordinary care might have discovered the perilous situation in which the plaintiff was placed by the concurring negligence of both parties, and neglected to use the means at his command to prevent the injury, then his plea of plaintiff's contributory negligence shall not avail him. This exception proceeds not upon the theory that the defendant has been guilty of another and independent act of negligence which is the sole cause of the injury and which must be charged as a separate and independent cause of action, but upon the ground that the negligence he was then in the very act of perpetrating,

Morgan v. Wabash Ry. Co.

was characterized by such recklessness, willfulness or wanton-ness as that he shall not be heard to say that the plaintiff was also guilty of contributory negligence."

If there was ever a case, short of willful murder, calling for the application of that doctrine and justifying its recognition in our law, it is the case at bar.

The clause of the statute above referred to by appellant is a part of that statute which imposes on the railroad company the duty of fencing its track, and penalties for failure to do so, and is as follows: "If any person not connected with or employed upon the railroad shall walk upon the tracks thereof, except where the same shall be laid across or along a publicly traveled road or street, or at any crossing, as hereinbefore provided, and shall receive harm or accident on account thereof, such person shall be deemed to have committed a trespass in so walking upon said track in any action brought by him on account of such harm against the corporation owning the railroad, but not otherwise."

The meaning of that clause in the statute is that under such circumstances the walking on the railroad track is to be considered negligence *per se,* and will defeat a recovery in a case where contributory negligence would defeat it. Such is the effect of the quotation in the brief of appellant's counsel from the text-writer. [Beach on Contr. Neg. (3 Ed.), secs. 202-212.] And if he was simply a trespasser, the same law-writer is authority for saying that the liability of the company "must be measured by the conduct of its employees after they become aware of his presence, and not by their negligence in failing to discover him." [Id., sec., 203.] This court has recognized the same rule. In Rine v. Railroad, 88 Mo. 392, l. c. 400, the defendant asked this instruction: "Defendant is liable in this case only if its servants failed to exercise ordinary care to prevent the injury after they became aware of the

danger to which deceased was exposed," before giving which
the court added, "or after they might have become aware
thereof by the exercise of ordinary care." This court held
that the instruction should have been given as asked, and that
the modification was error. In that. case the engine was
switching, running backwards, the engineer and fireman were
at their posts, the deceased was familiar with the tracks and
switches, knew the engine was coming, looked back and saw it
when it was close to him, the fireman saw him, but supposed
he would step off the track in time. Under that state of facts
the court, per Black, J., said: "Here the fireman and engi-
neer were at their proper places, were not going at an unlawful
rate of speed, and were not negligent in the management of
the engine and tender, unless it was after one of them saw
deceased was in actual danger. The deceased was a man of
discretion, he was familiar with the operation of the train and
also with the operation of the switches over one of which he had
just passed. All this the fireman well knew, and he had a
right, under the circumstances, to assume that the deceased
would use ordinary prudence, at least, for his own protection.
Such a qualification as the one in question will be proper in
some cases, but it can not and ought not to be applied in this
case." [l. c. 400.]

In Barker v. Railroad, 98 Mo. 50, the deceased was a tres-
passer on the track within the terms of the statute quoted, and
there was no qualification of that statute. The court by the
same learned judge said: "Being a trespasser, the company
owed him no duty except not to wantonly, willfully or with
gross negligence injure him." Then after referring to the
doctrine we are now discussing, the court said: "But this
duty on the part of defendant's servants only arises when and
after the perilous position of the person has been discovered.
. . . . But the argument is made on behalf of the plaintiff

that if the engineer was at his post of duty and on the lookout, he could have seen the deceased, and if he was not, then he was guilty of negligence. The answer to all this is that the company owed the deceased no duty to be on the watch for him. . . . . As to him, there was no breach of duty, for a simple failure to discover him in the commission of a trespass. As stated by a reliable text-writer, the general duty of a railroad company to run its trains with care, becomes a particular duty to no one until he is in a position to complain of neglect. Cooley on Torts, 660." After thus stating the law, the court said: "It is thought advisable to say again that Barker got upon the track and was killed at a place where the defendant's road was fenced and where there was nothing in the surroundings that would naturally or reasonably lead the servants in charge of the train to suspect that persons would be on the track. We have been speaking of the case before us, not of others which may present a different state of facts."

The above authorities state the law as contended for the appellant as strongly as any to which our attention has been drawn, and it will be noted that they state it with reservation. In Williams v. Railroad, 96 Mo. 1. c. 280, after citing Isabell v. Railroad, 60 Mo. 475; Harlan v. Railroad, 64 Mo. 480; Zimmerman v. Railroad, 71 Mo. 477; Yarnell v. Railroad, 75 Mo. 583, and Maher v. Railroad, 64 Mo. 267, Judge BLACK, again speaking for the court, said: "The general rule of the authorities before cited implies that the engineer is not bound to foresee the wrongful presence of persons upon the track or cars. The rule, however, as before stated, will in some cases, require a modification. It was said in the case of Harlan v. Railroad, 65 Mo. 22, that the company would be liable, though the person injured or killed was wrongfully on the track, if the defendant failed to discover the danger through the recklessness or carelessness of its employees, when the exercise of

ordinary care would have discovered the danger and averted the calamity. This qualification of the general rule was in substance asserted in Scoville v. Railroad, 81 Mo. 483; Frick v. Railroad, 75 Mo. 595; Kelly v. Railroad, 75 Mo. 138. . . . . Thus it will be seen that cases may and do arise where, though the company is entitled to a clear track, it can not fairly be presumed that the track is clear. A duty then arises to look out, and the liability is not limited to want of care after discovery of the danger."

It is argued that since the statute denounces as a trespasser one walking on the track of a railroad that is fenced, no custom or usage can alter that condition; and Lawson on Usages and Customs, sec. 216, is cited. Of course, usage and custom can not repeal a statute, and it is not contended here that it does. But usage and custom may change the condition of a thing upon which the statute operates; and by usage and custom a publicly-traveled footpath may be in fact created within an otherwise private inclosure, so that a person found walking upon it would not be amenable as a trespasser. The language of the statute itself excepts a track laid along a "publicly-traveled road." To fill this description it need not be a public road, but must be publicly traveled. If the railroad company, as the evidence tended to prove in this case, for more than twenty-five years had acquiesced in its track being used as a footpath by the whole community, it can not, if it does wrong, take refuge in the fact that its track was inclosed private property. Under such circumstances, this court in Lynch v. Railroad, 111 Mo. l. c. 609, per THOMAS, J., said: "We are not called upon at this time to decide whether a trespasser can take advantage of a failure of a railroad company to comply with city ordinances of the character of those read in evidence in this case, for all the evidence as set out in defendant's statement shows that the railroad right of way and tracks at

the point of the accident, were habitually used by the public for a passway to the streets of the city, there being four gates in the fence to enable pedestrians to get upon the right of way and tracks. Therefore, so far as the *locus in quo*, as to pedestrians, is concerned, it is the same as if it had not been fenced at all." In the same case it is decided that it is proper to instruct a jury that they may find for the plaintiff not only if the defendant's servants saw the deceased in time to avoid the injury, by the exercise of ordinary care, but also if they by the exercise of ordinary care might have seen him in time to have averted the injury; citing and approving Guenther v. Railroad, 108 Mo. 18; and Fiedler v. Railroad, 107 Mo. 645.

In Chamberlain v. Railroad, 133 Mo. 587, where the defense was as here, that the deceased was a trespasser on the track, and therefore they owed him no duty to be on the lookout for him, this court in an opinion by GANTT, C. J., approved an instruction that authorized a verdict for plaintiff if the jury found *inter alia* that the servants in charge of the train by the exercise of ordinary care could have seen the deceased in time to have averted the accident by the appliances at hand and failed to do so, and affirmed a judgment for plaintiff on a verdict found under that instruction.

There are other cases in our reports on this subject, but those above quoted are sufficient to show that the law on this point has been well considered and definitely settled by this court, and our decisions are all in harmony. The liability of the defendants in the Rine and Barker cases being limited to the negligence of the trainmen after they became aware of the perilous position of the person in jeopardy because the facts of those cases did not justify a wider range of inquiry, and in the other cases extending it to negligence in failing to use the means at hand to prevent the injury when they might with ordinary care have discovered the peril. In the one class of

cases the train crew had no reason to expect a man to be on the track, in the other class they had reason to expect such a condition, and the duty of those handling the train varied as the circumstances required.

In this case the men in charge of the train had no right to expect a clear track. For more than twenty-five years, as the evidence tended to prove, the track was the footpath for the pedestrians of the town and vicinity. Steps built to go over the fence, in addition to the gates the law required, were standing invitations to the public to come upon the tracks and use them for a footpath. In the Barker case it was said: "There was nothing in the surroundings that would naturally or reasonably lead the servants in charge of the train to suspect that persons would be on the track;" but the reverse is true of this case. We attach no significance to the fact that the man was killed near the farm crossing, for he was not using the crossing as such, he was walking along the track, not merely crossing it, and his proximity to the Kennedy crossing was a mere coincidence. The law of the case would have been the same if there had been no crossing at that point. As an abstract proposition it was negligence in the trainmen to have failed to observe that crossing, but the concrete proposition with which we are dealing is, that it was negligence in them to have failed to lookout for a man walking along the track as the plaintiff's husband happened to be and as the evidence tended to show the railroad people should have known some one was liable to be.

The very composition of this train, the necessity of running it as it was, the impossibility, under the circumstances, of the engineer and fireman seeing from their usual positions on the engine the track in front of them, created a necessity for placing some one of the crew where he could see, and distinguishes this case from the Rine and Barker and other like

cases.    Under the circumstances of this case, to station some one where he could see what the train was running into, would not be extra caution, but would be the suggestion of the most ordinary prudence.

The plaintiff had a right to go to the jury on the hypothesis that the servants of defendant were negligent in failing to use the means at hand to avert the calamity after, by the exercise of ordinary care, they could have discovered the peril. ·

The demurrer to the evidence was properly overruled.

II.    The instructions given were in the main like those given in other cases and approved by this court; but it does not follow that an instruction which is proper in one case is necessarily proper in another, having a general resemblance to the first.    As we have seen in the Rine and Barker cases, it was adjudged to be improper to submit an hypothesis to the jury involving negligence of defendant's servants after they might, by the exercise of ordinary care, have discovered the peril, yet altogether proper to have done so in other cases cited.    So, in the case at bar, it was improper to have submitted to the jury the question as to the conduct of defendant's servants after they became aware of the peril of the deceased, for the reason that there was no evidence tending to show that they did see him at all.    It was also improper to have instructed the jury, under the peculiar circumstances of this case, that it was the duty of the men in charge of the train to have stopped it if they could have done so by the exercise of ordinary care.    That would be a correct instruction under certain conditions, examples of which are shown in the facts of the cases cited, where such instructions were given.    But what we here say is in reference to the facts of this case.    An engineer at his post, in view of the track, seeing a man on it, apparently able to take care of himself and the conditions such that he can get off in safety, has a right to presume that he will do so, and the engineer is

not required to stop his train whenever he comes within stopping distance of every man he may see on the road. If authorities were needed on this proposition, they will be found collected in abundance in note 4, section 203, Beach on Contrib. Neg. (3 Ed.). But the law does impose on the engineer under such circumstances the duty of giving such warning signals as may be at his hand, and as the situation reasonably demands. Good common sense, brightened with the light of experience, will dictate what he should do. If the facts were as the evidence tended to prove, the plaintiff's husband was walking on the track unconscious or unmindful of his danger, not hearing the rumbling of the train nor the ringing of the bell; then if some one had been on the lookout, even after the train had approached too close to be stopped, and had given a few sharp blasts of the whistle it would not be unreasonable to presume the man's attention would have been aroused and his life have been saved. At all events, if that had been done, the defendant could with better reason say that its servants had not been reckless in their management of the train.

The only errors we find in the instructions are those above specified, namely, first, the hypothesis that the men in charge of the train saw the deceased in time to have averted the accident, and, second, that it was their duty to have stopped the train. With those features eliminated, the instructions properly declared the law applicable to the evidence.

But whilst those features of the instructions were inapplicable to the facts of this case, they were as to this case mere abstract propositions that could not possibly have affected the verdict. There was no pretense that any man on the train saw the man on the track. The undisputed facts show that the trainmen had willfully placed themselves where they could not possibly see before them. They went blindly down the road, neither seeing nor caring for the consequences, and never knew

that they had killed the man until they learned it historically. How, then, could the jury have possibly been misled by the statement that if the engineer saw the man in time to have stopped the train, he should have done so? The law is that a judgment should not be reversed unless it is believed that error was committed "materially affecting the merits of the action." [R. S. 1899, sec. 865.] There is no such error in this record and therefore the judgment is affirmed. *Brace, P. J.,* concurs; *Robinson, J.,* concurs in the result; *Marshall, J.,* dissents.

## IN BANC.

PER CURIAM.—The foregoing opinion by *Valliant, J.,* in Division No. One, is concurred in by *Gantt, C. J.,* and *Burgess* and *Brace, JJ.; Robinson, J.,* concurs in the result; *Sherwood* and *Marshall, JJ.,* dissent.

## I.

MARSHALL, J.—(*dissenting*).—Briefly stated my reasons for dissenting in this case are these: The facts show that the track was practically straight for about thirteen hundred feet; that the engine was backing with the tender piled with coal so that the engineer and fireman could not see the deceased on the track; that the deceased walked on the track with his back to the train and never looked behind; that the deceased was in the full possession of all his senses, and that he lived in the neighborhood and knew that trains were liable to pass along there at almost any time. The train was running about twenty-five miles an hour. The place where the accident occurred belonged to the defendant and was not within the corporate limits of any city or town. The

train men did not actually see the deceased or know he was on the track until after he was killed, and the deceased did not see the train coming. It is measurably clear that the deceased could have heard the noise made by the running of a train at the rate of twenty-five miles an hour quite as easily and distinctly as the trainmen could have heard the deceased walking along the railroad track, and likewise that the deceased could have seen the train as clearly and as quickly as the trainmen could have seen him.

In my judgment it was negligence for the trainmen to run the engine backwards with the tender so piled with coal as to prevent them from seeing a person on the track, and it was negligence for the deceased to walk along a railroad track without looking back to see if a train was coming. If the trainmen had not been thus negligent they would have seen the deceased in time to stop the train before injuring the deceased or to have sounded the whistle often enough to attract his attention and thus cause him to get off of the track, and if the deceased had not been thus negligent he would have seen the train and could and would have avoided the accident by getting off the track, and so would not have been injured even though the defendant was negligent. Thus the defendant was negligent and the deceased was negligent and the mutual negligence of both parties was the concurrent and proximate cause of the accident.

The majority opinion concedes this to be true. There is no element of wantonness in the case. The trainmen did not actually know of the peril of the deceased and did not intentionally run over him, and the deceased did not actually know of his peril and did not intentionally permit himself to be run over. Wantonness means a wrongful act intentionally done, and while both parties were guilty of a wrongful act, neither intended that the injury should be done.

The majority opinion concedes that there was no wantonness in the case. And this must be so, for the act of the trainmen was no more wanton than the act of the deceased.

The majority opinion however proceeds upon the idea that the act of the defendant was so grossly negligent as to amount to recklessness. Conceding that this is true, the act of the deceased was of the same character, degree and extent as that of the trainmen. So the recklessness of the one was just as great, no more or less, as that of the other, and the recklessness of both combined to produce the result, which would not have happened if only either one of the actors had been reckless and the other had not. The track was straight. Each could have seen the other if they had not been negligent or reckless. Recklessness means doing an act knowing that injury to another is liable to ensue and not caring whether it does ensue or not, but it does not imply or involve actual knowledge that the injury is about to be done to another in time to avoid the doing thereof. If it be granted that the trainmen knew that they were liable to injure persons on the track by backing the engine so loaded with coal as to prevent their seeing such persons and did so without caring whether they injured such person or not, and were therefore guilty of recklessness, it is also true that the deceased must have known that by walking along a railroad track without looking back for trains which he knew were liable to pass at any time he was therefore just as reckless as the trainmen.

This case is not nearly so strong a case for the plaintiff as the case of Rine v. Railroad, 88 Mo. 392, or Jackson v. Railroad, 157 Mo. 621. Yet in both those cases the plaintiff was held not to be entitled to recover, while here the majority opinion affirms a recovery by the plaintiff. In the first case above cited the engine was backing and the deceased was

walking along the track with his back to the engine.    Each saw the other.    The trainmen supposed the deceased would get off of the track and the deceased intended to and attempted to get out of peril and actually stepped off of the main track on which he was walking onto a side track.    The deceased did not know the engine was going to run onto the switch track, while the trainmen did know that fact.    Yet a judgment for the plaintiff was reversed, and the opinion, written by BLACK, J., was concurred in by HENRY, C. J., and NORTON, RAY and SHERWOOD, JJ.    And it was distinctly held that the defendant was only liable if it actually knew of the peril of the deceased in time to avoid the injury and did not use ordinary care to prevent the accident, and that it was not liable if it was simply negligent in not using ordinary care to discover such peril.    This case is a condemnation of "Thompson's discovery clause," and of the instruction given for the plaintiff in this case, and an instruction into which the court had inserted "Thompson's discovery clause" was expressly declared to be erroneous.

In the Jackson case the deceased was rather weak-minded and strayed away from the care of his family and walked along the railroad track, in a town, with his back to the approaching train, which was running quite as rapidly as the engine in this case, and was run over and killed.    The track was straight.    The engine was running forward.    The trainmen saw the deceased but assumed that he would get off of the track.    The deceased did not see the train.    Yet under these circumstances a judgment for the plaintiff was reversed without remanding the cause, and the opinion, written by BURGESS, J., was concurred in by GANTT, P. J., and SHERWOOD, J.

Let those who can reconcile the opinions in those cases with that of the majority in this case.    I confess my inability to do so.

The plaintiff in this case relies chiefly upon the case of Chamberlain v. Railroad, 133 Mo. 587, and insists that the judgment must stand unless that case is overruled.   On the other hand the defendant strongly relies on the case of Sinclair v. Railroad, 133 Mo. 233, and contends that the judgment must be reversed unless that case is overruled.

In none of its salient features is the Chamberlain case like the case at bar, for in that case both parties, plaintiff and defendant, tried the case upon the theory that "Thompson's discovery clause" was the true law.   There the engine was running forward.   The trainmen saw the deceased in time to prevent the accident.   The deceased was walking along the track with his back to the coming train, and was not aware of his peril.   A recovery by the plaintiff was affirmed by a majority of this court in banc, on the ground that the defendant did not use ordinary care to prevent the accident after it actually saw the peril of the deceased.   In the Sinclair case "Thompson's discovery clause" was not invoked by the plaintiff or the jury instructed on that theory. On the contrary the charge was a failure of the defendant to exercise ordinary care after it actually knew the peril of the deceased.   In that case as here, the deceased walked along the track, as was his custom and that of people living in the locality, with his back to the approaching train and did not look behind him for the coming train, but was apparently oblivious of the conditions and passing events.   The case turned upon the question of whether the trainmen used ordinary care to avoid the accident after they actually knew of the peril of the deceased, and the facts showing that they did so, the judgment for the plaintiff was reversed by this court.   The principles herein set forth were not in terms presented in that case and hence were not expressly decided, but the relative duties of the railroad and persons using its tracks

were so fully and clearly stated in that case by the learned and lamented Judge MACFARLANE, that what was said is extremely apposite to this case and is so refreshingly wholesome reading that I adopt them and set them out again in full. That distinguished jurist said:

"I.   That deceased had negligently placed himself in a position of danger is not controverted by plaintiff. Ordinarily such contributory negligence would bar a recovery. But there is a well-recognized exception to the rule. The employees of a railroad corporation, in charge of a train, owe, even to a trespasser, the duty of care to avoid injuring him. [Fiedler v. Railroad, 107 Mo. 647.] The ground of this action is a neglect to perform that duty. Under the cause of action stated in the petition the original negligence of deceased in walking upon the track is impliedly admitted. His negligence in that particular is not, therefore, an issue in the case as made by the pleadings. The right of recovery depends upon the conduct of the parties in the situation they occupied immediately preceding the collision. The question involved requires a determination of the respective duties of the engineer and deceased in the circumstances in which they were situated, and whether those duties were discharged.

"To determine these the situation and surroundings must be considered. The day was mild, for the season, and there was but a slight breeze in the air. The train was running through a farm on a slightly ascending grade. There was neither noise nor objects to distract or attract the attention of either the engineer or deceased, except the noise of the train and the ringing of the engine bell. The train was equipped with all modern improvements intended for controlling it. The engineer had twenty years' experience, and was presumably skilled.

Vol. 159 Mo—19

"The petition charges that the engineer was negligent, after seeing the dangerous position in which plaintiff's hus-band was situated, in failing to give a danger signal of the approach of the train.    What was the duty of the engineer in respect to giving deceased warning, and when did that duty arise?

"It may be safely said as a general rule that the duty of care arises in all cases as soon as the perilous situation of the trespasser is discovered.

"The instinct of self-preservation, as well as common judgment, impels one on a railroad track to leave it on the approach of a train.    This law of nature is universal with intelligent beings.    From this universal law is evolved the legal principle that persons in charge of a train have the right to presume that one walking upon the track will leave it in order to allow a train to pass if they have knowledge of its approach.

"Under the circumstances in which these parties were placed the immediate duty required of the engineer, when he saw that deceased was unaware of his peril, was to give a proper warning.    This duty required such a signal as could have been heard and could not have been misunderstood; such an one as would arouse deceased from his apparent mental abstraction or indifference to a sense of his danger, and the necessity of action on his part to avoid it.

"That such a signal was given is not denied, and is established by the evidence of many witnesses and is disputed by none.    It was also the usual danger signal.    It was heard all over the immediate neighborhood.    One witness, called by plaintiff, who was some distance from the place of the accident, described it as a sharp whistle, such as is given for stock on the track, and that it could have been heard two or three miles.    The engineer can not be charged with negli-

gence as to giving a signal, nor as to its character and suffi-
ciency.

"II.    The next inquiry is whether the notice was timely.
The engineer testified that he first saw deceased when about
four hundred feet from him, and immediately gave the
danger signal.    If his testimony is true then the charge of
negligence in respect to giving the signal is met and refuted.
There was no direct evidence that the engineer saw deceased
sooner, nor is there a charge of negligence in failing to see.
But the evidence shows that deceased was in full view of the
engineer for about one-eighth of a mile, and from that cir-
cumstance, coupled with the duties of the engineer to his
employer to keep a watch upon the track, a jury might infer
that deceased was seen for more than four hundred feet.
[Rine v. Railroad, 100 Mo. 235.]    Assuming, then, that the
engineer saw deceased as soon as he came in sight, when did
his duty of care begin ?

"Deceased was bound to know, and, in this case did in
fact know, that a train was due behind him.    It was his duty
to keep a vigilant watch for it.    Indeed, that duty is imposed
upon all who go upon a railroad track.    The engineer had
the right to suppose, when he first saw him, that he would
hear or see the train and leave the track.

"It was recently said by this court: 'Defendant, of
course, had the right of way, and was not bound to anticipate
that persons trespassing on the track would not step aside
before a coming train.'    [Hyde v. Railroad, 110 Mo. 279.]

"In another case it was said:  'When plaintiff stepped
on the track, it was the engineer's duty to warn him, and this
he did.    The engineer had a right to presume that an adult
would at once step off the track and avoid danger.    He was
not required to stop his train until he saw plaintiff was in a
position of danger or peril.'    [Reardon v. Railroad, 114 Mo.
405.]

"In that case the court says further: 'The use of the steam brake immediately upon his entering upon the track would unquestionably have stopped the train, but whether it would after plaintiff had fallen and it became evident he was in peril, was, at least, a debatable question.'

"From these cases, and many others that might be cited, it seems to be well settled that where no conditions intervene to confuse, or to prevent hearing a signal, and knowing its object, it will be sufficient if given in time for the trespasser to leave the track safely.

"The question then is, was the signal given in time to have allowed deceased opportunity to escape the danger. The engineer testified that the danger signal was sounded when the engine was about four hundred feet from deceased. Other evidence made the distance three hundred and forty feet. These are the maximum and minimum estimates. If the train was running twenty-five miles per hour, which was the estimated rate, it covered about thirty-six feet every second, or three hundred and sixty feet in ten seconds. If deceased walked at the rate of two and one-half miles per hour he would travel about three feet in a second, and thirty feet in ten seconds. Five feet would have taken him out of danger.

"McDowell, a witness for plaintiff, testified that while working about his barn he heard the whistle and thinking some of his stock was in danger he stepped around to a point from which he could see the train and deceased. It required about three steps in order to get the view. He saw deceased walking down the track as though he did not know the train was following. After he got in sight the engine whistled two more times, the last of which was just as deceased was struck. After he came in sight of deceased he took three or four steps before he was struck. Even according to the

evidence of this witness deceased must have walked fifteen or twenty feet after the danger signal was given. He had therefore ample time to have escaped the danger after the signal.

"The engineer was not, therefore, negligent in respect to his first duty on ascertaining that deceased was not aware of the approach of the train.

"III. The petition charges further that the engineer negligently failed and neglected to use the air-brakes and other appliances ready and at hand for stopping the train. In other words, the charge is that the engineer was negligent in not stopping the train in time to avoid striking deceased. This duty of the engineer arose as soon as he knew, or by proper care ought to have known, that deceased did not regard the warning signal. The engineer on this question testified that after giving the signal, and observing that deceased did not heed it, he immediately put on the full force of the air brakes, reversed his engine, and did everything in his power to arrest the speed of the train and stop it, continuing, at the same time, to sound the alarm whistle. His evidence receives some corroboration from the trainmen and some other witnesses. There was no direct contradictory evidence. One of plaintiff's witnesses who had been a locomotive engineer testified that the engine was reversed between the first and second whistles, and the air-brakes were on when the train stopped, but he did not know when the air was applied.

"The evidence tended to prove, though conflicting on the question, that the engine ran five hundred and sixty feet after deceased was struck. The evidence also tended to prove that the train could have been stopped in six or seven hundred feet. From these facts the further fact that everything was not done that could have been done to stop the train, might be

inferred. But that is not the question. The question is whether the train could have been stopped in time to have avoided the calamity. If it could not and the collision was inevitable, unless deceased acted, then, though the engineer was negligent, it could not be attributed to defendant as the proximate cause of the disaster.

"When such dire results occur in so brief a period of time, it is difficult to measure accurately either time or distance. Suppose the engineer was three hundred and fifty feet from deceased when his duty to warn him arose, and the train was running twenty-five miles per hour, or say thirty-five feet per second. The engineer sounded the whistle and observed its effect. Say that occupied only three seconds, it could scarcely have been less. The train had then run one hundred and five feet nearer to deceased. Take two seconds more for applying the brakes and reversing the engine and the train moved seventy feet farther, before its motion could have been retarded. The engine was then within one hundred and seventy-five feet of deceased. Suppose it ran five hundred and sixty feet after it struck deceased, the stop would have been made in seven hundred and thirty-five feet. It is perfectly clear that the life of plaintiff's husband could not have been saved by anything the engineer could possibly have done toward stopping the train; for at most he had only four hundred feet in which to do it. We must, therefore, conclude that no negligence on the part of defendant was shown.

"IV. This conclusion obviated the necessity of considering the contributory negligence of deceased after the signal was given. It was certainly his duty to leave the track immediately on hearing the signal, and not to depend upon the engineer to stop the train. If by reason of a neglect of that duty he was caught on the track his contributory neg-

ligence would defeat his recovery though the engineer was also guilty of negligence in not stopping in time to avoid the collision. The character of the signal was such that in the quietness of that afternoon, and the surroundings, we can but conclude that it was heard. The evidence also shows that deceased was struck within thirty-five feet of the point at which he would have left the track. It shows further that after the signal was given deceased changed his course from the center of the track in a diagonal direction toward the left rail, and when struck was outside of the rail. These facts show conclusively that the signal was heard by deceased. His subsequent conduct indicates that he miscalculated the distance it was from him, and thought he had time to reach the footpath by which he intended to leave the track, or that he had time to walk off deliberately. One or the other of these conclusions must be drawn. In either case there would be contributory negligence.

"We are of the opinion that the evidence shows no liability, and the judgment is reversed. All concur."

This opinion was concurred in by BRACE, P. J., and BARCLAY and ROBINSON, JJ.

When the Chamberlain case was decided in Banc, the Sinclair case was considered, and was followed and approved by the whole court. The majority of the court held that the insertion of "Thompson's discovery clause" in the instruction was not prejudicial error under the facts in that case, because the evidence clearly showed that the trainmen did not exercise ordinary care to warn the deceased of his peril after they actually saw it and further saw that he was unaware of his peril, and therefore a recovery by the plaintiff was affirmed by this court.

But neither of these cases supports the doctrine of "Thompson's discovery clause." In neither case was that

doctrine approved. It was not present in the Sinclair case, and in the Chamberlain case the logic of the opinion of the Court in Banc, is a condemnation of that doctrine and an admission that it is not the true law. In my judgment both of these cases can stand together, but in so far as they apply to this case, they are sufficient authority for holding that the judgment in this case should be reversed, and by clear intendment are a renunciation and condemnation of the underlying want of reason and utter lack of mutuality of obligation and duty resting upon the respective parties, the railroad men and the person walking upon the track, which is expressed in "Thompson's discovery clause."

For the foregoing reasons I am of opinion that the demurrer to the evidence should have been sustained, and therefore think the judgment should be reversed.

## II.

The instruction given for the plaintiff told the jury that if they found the defendant was negligent and also found that the deceased was negligent, still they should find for the plaintiff if they believed and found from the evidence that the defendant knew of the peril of the deceased, *or by the exercise of ordinary care could have discovered his peril*, in time to prevent the injury and did not do so, unless they further believed and found from the evidence that the deceased knew of his peril in time to avoid the injury and did not do so.

This instruction is wrong for these reasons: First, because it authorizes a verdict for the plaintiff, unless both the trainmen and the deceased were wanton, when even the majority opinion holds that there is no element of wantonness in the case; second, because by employing the italicized

words, "or by the exercise of ordinary care could have dis-
covered his peril," in defining the defendant's liability, it
mixes simple negligence with wantonness and metes out the
same punishment to the defendant whether it was wanton or
simply negligent, whereas in defining the liability of the
deceased it limits his duty to wantonness and entirely omits
the element of his negligence, in that, while it says the plain-
tiff can not recover if the deceased knew his peril in time
to avoid the injury it does not prohibit a recovery if the
deceased "by the exercise of ordinary care could have dis-
covered his peril" in time to avoid the injury.

The same reason, logic and law which would mix the
negligence and wantonness of the defendant, should also mix
the negligence and wantonness of the deceased. In my
judgment it is error to mix the two as to either the defendant
or the deceased, but if it is mixed as to one it should, in com-
mon justice, be mixed as to the other also. This is what
Beach on Contributory Negligence (3 Ed.), sec. 54, desig-
nated, "Thompson's discovery clause."

The failure to exercise ordinary care to discover the peril
of a person on a railroad track is simply negligence, and the
failure of such a person to exercise ordinary care to discover
his peril is contributory negligence, and a recovery by plain-
tiff under such circumstances is as much against the funda-
mental principles of law as if the negligence and contributory
negligence had appeared upon the first analysis of the case
instead of after the case had been reduced, by stages of rea-
soning or occurrence of events, to its last or ultimate analysis.

If this is not true, then some court or law-writer or
logician should tell why it is not true. No one has attempted
to do so. The majority opinion in this case passes it over in
silence. It is as certainly true as a demonstration in algebra,
that an instruction such as the one under consideration is

equivalent to a peremptory instruction to the jury to find for the plaintiff. For it is conceded that the defendant was negligent and that the plaintiff was guilty of contributory negligence. It is also conceded that neither party was guilty of wantonness, or if they were, both were equally so guilty. Thus far the plaintiff's attorney could concede everything that the defendant's attorney was at liberty to urge upon the consideration of the jury. But the plaintiff's attorney could and would say to the jury that the plaintiff was still entitled to a verdict because the court had instructed them that if by the exercise of ordinary care the defendant could have discovered the peril of the deceased in time to have avoided the injury and did not do so, the plaintiff was entitled to a verdict, and as the track was straight for about thirteen hundred feet the trainmen could, and if they had exercised ordinary care would, have seen the deceased on the track, and could have seen that he was heedless of the approach of the train, and hence could have stopped the train in time to have avoided the injury, or, as the majority opinion puts it, could have sounded the alarm whistle often enough to bring the deceased to a realization of his peril in time to have avoided the accident.

There is no reply the defendant could make to such an argument, except that by the exercise of ordinary care the deceased could have discovered his peril in time to avoid the accident and did not do so, and such reply was not available to the defendant because the instruction imposed no such duty upon the deceased, but on the contrary limited his obligation to getting off the track if he *knew* his peril. The result is, such an instruction is just as advantageous and satisfactory to a plaintiff's attorney in cases like this as a peremptory instruction for the plaintiff would be, and it might just as well be understood now as at any time, whether this

court intends to approve such a practice. The majority opinion gives effect to it without so expressly committing the court to the doctrine. I can not agree to it even by implication or permit it to pass in silence.

For these reasons I am constrained to dissent from the majority opinion. *Sherwood, J.*, concurs herein.