SCHMIDT et al., Appellants, v. ST. LOUIS RAILROAD COMPANY.

Division One, March 31, 1899.

149   269
81a  357
d81a 392
149   269
157   253
159   274
149   269
s163  649
88a  388
f89a  399
89a  400
89a  541
149   269
97a  *381
149   269
101a  ⁵  60

1. **Practice**: EXAMINATION OF WITNESS. In the first paragraph of this opinion it is held that the cross-examination of a little girl fourteen years old, by plying her with confusing questions as to what her testimony had been on three former examinations, and the remarks of the court thereon, were so unfair, under the circumstances, as to justify a reversal of the judgment on that ground alone.

2. **Negligence**: ORDINARY CARE: AS APPLIED TO DIFFERENT PERSONS. The term "ordinary care" when used to define the duty of a gripman in charge of a street car, means that high degree of care, that "vigilant watch," imposed upon him by the city ordinances; but when applied to a girl nine years old, just dismissed from school and about to run in front of the gripman's car, it means the degree of care which in the ordinary experience of mankind is to be held to be expected of such a child.

3. ———: RESPECTIVE BURDENS OF PARTIES. When plaintiff's averment is that defendant was guilty of negligence and that that negligence caused the injury charged, and the defendant's plea is that the plaintiff was himself guilty of negligence contributing to cause the injury, the burden of proving defendant's negligence and its consequence is on plaintiff, and the burden of proving plaintiff's contributory negligence is on defendant.

4. ———: ———: TAKING CASE FROM JURY. If plaintiff's own evidence, in this state of the pleadings, shows that he was guilty of negligence that contributed to his injury, the court should take the case from the jury.

5. ———: RATE OF SPEED: TWELVE MILES AN HOUR: LICENSE. Authority given by a city ordinance to a street railway to run its cars at a rate of speed not exceeding twelve miles an hour, is not a license to run at that speed under any and all circumstances, if the ordinance also imposes the duty of exercising a "vigilant watch," and to stop the car as soon as possible in case of danger to pedestrians. If there is a crowd of school children on the street, the gripman must regulate the speed of the car and handle the appliances for its control, as one capable of handling with skill such a machine and mindful of his responsibility would do.

6. ———: INSTRUCTIONS: APPLICABLE TO THE CASE. Instructions are to be understood as applied to the facts of the case.

7. ———: ———: ASSUMPTION OF FACT CHARGED. An instruction should not assume the truth of the fact charged.

8. ———: ———: CONTRADICTORY TESTIMONY: CREDIBILITY. An instruction that tells the jury that, if the testimony given by a witness on a former occasion on the same subject, is different from that given at the trial, and no satisfactory reason is advanced for the difference, the jury is justified in disregarding the whole of the testimony of such witness, is erroneous.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

SALE & SALE for appellants.

(1) The court erred in commenting, in the presence and hearing of the jury, on the testimony of Minnie Hartung, a witness for plaintiff, while said witness was being examined at the trial. State v. Breeden, 58 Mo. 507; Hair v. Little, 28 Ala. 236; State v. Meagher, 49 Mo. App. 571; Greenl. on Ev. (Redfield's Ed.), sec. 462; Green v. Cochran, 43 Ia.

545. (2) The court erred in giving defendant's instruction numbered 8, because it does not state the law. Jones v. Jones, 57 Mo. 138; McCormick v. Monroe, 64 Mo. App. 197; 2 Thompson on Trials, secs. 2420 and 2421. (3) The court erred in refusing plaintiff's instruction numbered 4, which permitted the jury to find that the defendant was negligent in running its train under all the existing circumstances and conditions at the rate of twelve miles per hour, although by ordinance the defendant was permitted to run its cars at a speed not exceeding that rate. Booth on Street Railways, p. 438; Railroad v. Ganse, 38 Ill. App. 212; Humbird v. Railroad, 110 Mo. 76; Campbell v. Railroad, 59 Mo. App. 151. (4) The court erred in refusing to give plaintiffs' refused instruction numbered 3, which told the jury, in the language of the ordinance, that it was the duty of the gripman and conductor to keep a vigilant watch for children either on the track or moving towards it, and that if the accident occurred in consequence of a failure of the gripman and conductor, or either of them, to keep such watch, they should find for the plaintiffs. Humbird v. Railroad, 110 Mo. 76; Fath v. Railroad, 105 Mo. 537; Hilz v. Railroad, 101 Mo. 36. Failure to keep such watch was negligence per se. Keim v. Railroad, 90 Mo. 321; Bergman v. Railroad, 88 Mo. 678. (5) The court erred in declaring in defendant's instructions numbered 3 and 5, that if the gripman saw the child as she was running towards the track as quickly as he could, by the exercise of ordinary care on his part, the defendant's duty in this respect was fulfilled. These instructions entirely ignored the city ordinance and are only applicable under the law, where the negligence complained of and found by the jury to have caused the accident, is something other than a failure to comply with the ordinance requiring a vigilant watch. Wilson v. Cunningham, 3 Cal. 241; Hudson v. Railroad, 104 Mo. 390; Bunyan v. Railroad, 127 Mo. 12; Cook v. Traction Co., 80 Md. 551.

SMITH P. GALT for respondent.

(1) Plaintiffs' instructions given by the court, as prayed, or as modified by the court and then given, were very favorable to the plaintiffs. Their refused instruction did not declare the law applicable to the case: First, because it ignored the deceased child's own negligence; and, secondly, there were no children crossing the street, and there was no evidence to show that the gripman had any reason to anticipate the sudden appearance of children or other persons upon the track at that point, any more than he would have reason to anticipate it at any other point along the whole length of Broadway, because persons, men, women and children are always going along on the pavement and may run across the street at any point, but if the car has to be slowed down, lest they may run across, and the car must be run at such a rate, that in case they do run across, it can be stopped before they get to the track, then, that means practically the destruction of street railway travel in St. Louis, particularly "rapid transit" that obtains in every city. The train would have to be slowed down all the time. Passengers have rights as well as pedestrians. Maschek v. Railroad, 71 Mo. 276; Rack v. Railroad, 173 Ill. 289; Callery v. Transit Co., 185 Pa. St. 176; Fletcher v. Traction Co., 185 Pa. St. 147; Ledman v. Railroad, 50 N. Y. Sup. 895; Stabeman v. Railroad, 155 N. Y. 511; Kierzenkowski v. Traction Co., 184 Pa. St. 459. (2) Appellants complain that the court used the words "ordinary care" in some of the instructions; but under the decision in Sanders v. Southern Railway Company, 147 Mo. 411, "ordinary care" was the only measure of care and caution incumbent upon the defendant; because it does not appear by the record that the ordinances offered in evidence by plaintiffs were ever accepted by the defendant, and the city could not create a new civil liability on the part of the defendant. But, if that were not the case, an instruction

given in behalf of the plaintiffs, as modified by the court, required the gripman to keep "a vigilant watch for persons moving towards the track," in accordance with the terms of the ordinance, and the jury must have understood that he must keep such watch as persons of ordinary prudence under the same circumstances would. (3) Appellant can not be heard here as to any action of the court below, to which at the time he did not object or except, and no exception was saved throughout the entire cross-examination of witness Minnie Hartung, after she became confounded by showing her that her testimony in chief was a palpable falsehood, according to her testimony at the coroner's inquest, and in her deposition taken by plaintiffs two months after the accident, and by her testimony at the former trial, and she then refused to answer questions at all, or hesitated so long that counsel had to proceed with other questions that she would answer. The only thing plaintiff's counsel excepted to was the remark of the court to counsel, "she answered your questions very promptly on the examination in chief," in explaining his ruling on the admission of evidence. It was no comment on the evidence, but the statement of a fact, which was as patent to the jury and counsel as to the court, and could not have affected the verdict one bit. Such and kindred remarks by the court are of daily occurrence in the trial of cases, and don't affect anything. The court itself frequently examines witnesses, and it is its duty to do so when it is apparent that the examination is for the purpose of showing the improbability or falsity of a witness' prior statement.

VALLIANT, J.—This is an appeal from a judgment upon a verdict for defendant in a suit brought by plaintiffs to recover damages for the death of their daughter aged nine years who was run over by a street car of defendant and killed in St. Louis, November 15, 1893.

The petition alleges that at the time defendant was operating a cable street railroad along Broadway under

license from the city, which reserved the right to regulate the running of cars and their rate of speed and that there was then an ordinance of the city in force, which provided: "The conductor and gripman or other person in charge of any street car shall keep a vigilant watch for persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons, the car shall be stopped in the shortest space and time possible."

The petition also alleges that plaintiff's child was run over and killed at the corner of Lemp avenue and Broadway by a train of defendant's cars on November 15, 1893, and charges the negligence as follows: "That immediately prior to the happening of the accident, said train was moving north on Broadway, on a down grade, approaching the intersection of Broadway with Lemp avenue, and while so moving, said train was negligently permitted to run at full speed, with all its brakes thrown off; that while so running and approaching Lemp avenue, the gripman negligently failed to give any warning of the approach of said train to Lemp avenue; that the gripman and conductor and each of them, negligently failed to keep a vigilant watch, or any watch whatever, for persons moving towards the track, and that but for their negligence in this respect, Maggie Schmidt could have been seen approaching the track in time to have prevented the accident."

The defendant denied the negligence alleged, and pleaded contributory negligence on the part of Maggie Schmidt in failing to look or listen for the approaching cars of defendant before attempting to cross the street..

The testimony on the part of the plaintiff tended to show that the accident occurred at the time and place stated, at the hour of noon, at which time the Shepard School, located a block and a half east of Broadway, had just been dismissed for the noon

recess, and there were school children on Broadway near where the deceased child attempted to cross the track. The train was going north on Broadway; as it approached Marine avenue, which is the next street south of Lemp avenue, where the accident occurred, there was a lot of school children chasing across Broadway ahead of the train; the gripman rang the bell on approaching Marine, but not on approaching Lemp avenue. The sun was shining and the track was dry. After leaving Marine avenue the train was going on a down grade, at the full speed of the rope, twelve miles an hour, which was the maximum limit of speed fixed by ordinance, and the car struck the child with full force when she was about the middle of the track, the post where the headlight is fastened striking her head, her cap flew back into the aisle of the grip car; just as the car struck her the brakes were applied, and when it stopped it was found that she had slipped under the life guard, had been dragged about thirty feet, and was lying with her head wedged against the grip-bar that goes into the slot. The testimony on the part of plaintiff also tended to show that as the train was passing Marine avenue there was a drunken man there near the sidewalk, who attracted the gripman's attention, and the gripman was looking back at this man and continued to do so until the dashboard of the grip car struck the child.

The testimony on the part of defendant tended to prove that the train was running at full speed, twelve miles an hour; that the gripman was looking ahead; that there was a buggy passing south on the east side of the street and as the child ran from the sidewalk this buggy obstructed the gripman's view and he did not see her until she appeared from behind the buggy; that he immediately did his best to stop the car, but it was impossible to do so.

In rebuttal, testimony for plaintiff tended to prove that there was no buggy passing as claimed by the gripman.

At the instance of plaintiffs, the court gave the following instructions, having first modified all but one of them by inserting the words which appear in italics:

1.   "Upon the issue as to whether deceased was guilty of negligence contributing to her death, such as will prevent plaintiffs from recovering in this case, the court instructs you that the law requires all persons situated as deceased Maggie Schmidt was when and before the accident happened, to exercise ordinary care and caution to avoid the injury to themselves, and that the absence of such care and caution constitutes negligence.   In determining, however, whether the deceased Maggie Schmidt was guilty of such negligence, the jury should take into consideration her age and capacity, since the law requires of a child nine years old only such care and caution as might reasonably be expected of one of her age under similar circumstances.   If, therefore, you find that the deceased Maggie Schmidt was using the care that children of her age and capacity usually exercise, or that might reasonably be expected from one of her age and capacity under similar circumstances, then she was not guilty of negligence within the meaning of the law and these instructions.   The court further instructs you that the burden of showing that the deceased Maggie Schmidt was guilty of negligence contributing to her death is upon the defendant company.

2. "The jury are instructed that, even if they should find from the evidence that the deceased Maggie Schmidt was negligent in going upon the track of the defendant company, yet the court further instructs you that such negligence will not of itself prevent a recovery in this case by plaintiffs, provided you further find from the evidence that the gripman, by keeping a vigilant watch for persons moving towards the track,  could have seen said Maggie Schmidt approaching the track in time to have prevented the train from running over and killing her.   If you find *from the evidence*  that said gripman and conductor, or either of them, was not keeping

such a vigilant watch, and you further find *from the evidence* that the deceased Maggie Schmidt would have been seen *by said gripman* in a position of danger in time to have avoided running over and killing her, *by the exercise of ordinary care on his part*, then your verdict should be for the plaintiffs, although you should also find that the deceased was guilty of negligence in going upon the track.

3.   "The court instructs the jury that it was the duty of defendant's gripman to sound his gong or bell when approaching Lemp avenue, so as to give notice to persons desiring to cross said street of the approach of the train of cars, and if you find from the evidence, that said gripman failed to sound his gong or bell *or give any other warning* when approaching said avenue, and that, but for his failure to sound his gong or bell *or give such warning*, the accident complained of would not have happened, your verdict should be for the plaintiffs, *provided you further find from the evidence that Maggie Schmidt at the time exercised such care for her own safety as could be reasonably expected of a child of her age and capacity.*"

5.   "The court instructs the jury that the law requires that the defendant's servants should be watchful to see that the way is clear in the direction in which the train is moving and that, where they have reason to anticipate the sudden and unexpected appearance of children upon or approaching the track, they should so manage the grips and brakes of the cars as to be able to stop the cars quickly and readily; should occasion require.   If, therefore, under all the circumstances detailed in the evidence, you find that there was reason to anticipate the sudden and unexpected appearance of children upon or approaching the track, at the intersection of Lemp avenue with Broadway, and you further find that the defendant's servants in charge of its train of cars were not so managing its grip and brakes as to be able to stop said train readily and quickly, should occasion require, and you further

find that the death of plaintiff's daughter was caused by the failure of defendant's servants to so manage said grip and brakes, then your verdict must be for the plaintiffs, *provided you further find from the evidence that Maggie Schmidt at the time exercised such care for her own safety as could be reasonably expected of a child of her age and capacity.*"

The court also gave, at the instance of the defendants, several instructions, the first, fifth, sixth and seventh of which are not complained of. The others are as follows:

2. "The court instructs the jury that it is the duty of persons before crossing the street upon which cable cars run, to listen and look for cars that may be approaching, and if they can be heard or seen, and there is any danger from them in attempting to cross the track, then they must stop before reaching the track and let the car pass, and not put themselves in danger from it, and if the jury believe from the evidence that Maggie Schmidt had capacity to know that if she got upon the track in front of and near to the approaching car she might be struck and hurt, and the jury further believe that she could, by the exercise of ordinary care as explained in these instructions, before leaving the pavement or reaching the track, have seen or heard the approaching cars, then it was her duty to stop, and not run upon the track, and your verdict must be for the defendant.

3. "The court instructs the jury that a street railway company is not obliged to stop its cars or slow up, because there are persons, adults or children, on the pavement; that the defendant, the St. Louis Railroad Company, had the right to run its train, at Lemp avenue and approaching it, at 12 miles an hour, and the gripman was not required to slow up or stop merely because there were persons on the pavement, and you must not presume any negligence on his part merely from that fact, and if you believe from the evidence that as he was approaching Lemp avenue and crossing it, he was looking ahead of him down the street, attending to his

duties as defined in the instructions, and that while Maggie Schmidt was running from the pavement towards him he saw her as quickly as he could by the exercise of ordinary care on his part, under all the circumstances in evidence, and promptly did his best to stop the train, then the jury will find their verdict in favor of the defendant; and the court further instructs you that if you believe he did not do so, but was negligent, and you also believe from the evidence that Maggie Schmidt was also negligent for one of her age and capacity, as explained in these instructions, in running directly in front of the train and so near to it as she did, and that she thereby contributed to the accident, then your verdict must be for the defendant.

4. "What constitutes 'ordinary care' as mentioned in these instructions depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions.

8. "The court instructs the jury that if they believe from the evidence that any witness, in testifying in this case at any time before this present trial of the case, testified to material facts therein, directly different from the statements made in regard thereto by such witness on this trial, and no good and sufficient reason has been shown why there should be such difference in the testimony of such witness, then the jury are justified in disbelieving the whole or any part of such witness' evidence on this trial. And the court further instructs you that, which direction the gripman was looking and what he did as Maggie Schmidt was running from the pavement to the track, and which way he was looking immediately before that, are such material facts."

Barring the instructions given by the court, defining "burden of proof" and "preponderance of the evidence," the foregoing are all the instructions given by the court.

The court refused to give instruction number 4 of plaintiff's refused instructions, which was as follows:

4. "The court instructs you that while the defendant company was permitted by ordinance to run its cars, at the point where the accident happened, at a speed not exceeding twelve miles per hour, yet such permission fixed the highest rate of speed at which the defendant company was permitted under any circumstances to run, and did not authorize the defendant company to run at such rate regardless of any and all circumstances and conditions that might exist. If, therefore, you find that the deceased Maggie Schmidt was run over and killed by the defendant at a point on the defendant's track where the defendant's gripman had reason to anticipate the sudden appearance of children or other persons upon the track, and if you further find that defendant at the time of running over said child was running its train of cars at a rate of speed which under the facts and circumstances shown by the evidence, was careless, negligent and dangerous, and in consequence thereof, ran over and killed little Maggie Schmidt, then your verdict should be for the plaintiffs, although you should also find that such rate of speed did not exceed twelve miles per hour."

Exceptions were properly saved to the action of the court in giving the instructions for defendant and in refusing the instructions asked by plaintiffs and in modifying some of plaintiff's instructions and in giving them in this modified form.

I. The plaintiff's first assignment of error relates to the treatment of one of their witnesses in the manner of the cross-examination, and the comment of the court on the evidence.

This witness was a little girl who at the time of the accident, which she witnessed, was eleven years old, at the time of the trial, fourteen. The next day after the accident she was examined as a witness at the coroner's inquest, afterwards her deposition was taken, after that there was a partial trial which resulted in a mistrial, in which her testimony was taken in open court, and again on the trial now in review, her testimony was given in open court. Her testimony on all of these occasions was taken down and written out, and counsel at the last trial had the transcripts of her three previous examinations before them.

It appeared from the evidence of this little girl that she was in the humbler walks of life, was working out as a servant; and although she was going to school at the time of the accident and was one of the flock of school children turned loose on the streets, yet she had not much education and her condition in life was such as that she would not be expected to have the composure and self-confidence in the august presence of the court, that would be expected of one even of her age and sex in more favored walks. She became confused upon the stand, and gave way to her tears. In reading the transcript of her cross-examination one can not be astonished at either her confusion or her distress. When she was asked concerning the accident her answers were straightforward and without hesitation. But when she was asked, as she frequently was, as to whether or not certain questions were asked and certain answers given on one or more of the former occasions and whether or not on one former occasion she had been asked certain questions as to whether or not on another former occasion she had been asked certain questions and had made certain answers she became confused, and hesitated long before answering, sometimes not answering at all, and frequently while she was in that confused condition the question would be asked her if she answered as suggested did she tell the truth. Counsel asking these questions had in his

hand, and cautioned her that he had the transcript of her former testimony. Running all through the cross-examination were intimations that she was testifying falsely and that some one had told her what to say. This cross-examination was within the latitude that the law permits, because of the impracticability of restricting it, but in this instance it was pressed to the very verge of the privilege.

The contest was a very unequal one; on the one side was one of the most able lawyers and skillful cross-examiners in the State, and on the other was a little girl whose position in life would naturally put her in awe of her surroundings. Under such conditions great unfairness may result, but the remedy is in the power of the trial judge to grant a new trial, if in his judgment injustice has been wrought. The trial judge holds in his hands more than any other tribune the power to shape the trials of cases to accomplish the ends of justice. One of the chief means at his disposal is the power to grant new trials and he ought to exercise it whenever in his judgment unfair advantage has been obtained at the expense of justice.

It is complained here that the learned trial judge assisted in the cross-examination, added to the confusion of the young witness, and unfavorably commented on her testimony in the hearing of the jury.

It is impossible to photograph the situation on the record, and therefore our view of it is very imperfect; but as no exception was saved as to any of the cross-examination conducted by the court or to any of the court's comments except one, there will be no necessity for our considering any but that one.

After the child had been under cross-examination for a long while and had apparently become so confused and distressed that she ceased to answer questions, the counsel for the plaintiffs asked her a question, and this occurred:

"Q.   Did you have any reason that you know of for not admitting that that was your signature?

"Defendant's counsel objected to the question.

"The court:   If she has not answered his question I don't see why you can ask that question.

"Mr. Sale:   I thought she might have a reason.

'The court:   She aswered your questions very promptly on the examination in chief.

"Mr. Sale:   We except to the remarks of the court.

"The court:   It is the fact.

"Mr. Sale:   If it is a fact it is as patent to the jury as it is to the court."

This was a comment on the evidence, which in view of the character of the cross-examination was injurious to the plaintiffs' cause.   It tended to give the impression to the jury that the witness was willing to testify for one side, but not for the other.   This was the plaintiff's only eye-witness to the whole accident.   All of her testimony is in the record including her testimony on the former occasions about which she was so confused, and we have read all of it.   There is really no such contrariety of statements on the several occasions as to impeach her veracity.   Whenever the counsel for defendant asked her about the occurrence in suit she answered his questions as promptly and with as much ingenuousness as she did the questions of the counsel on the other side.   It was only after she had been plied with the compound questions as to what questions had been asked her and what answers she had given on former occasions that she was overcome with confusion and distress.

The plaintiffs in the trial did not get the benefit that they were entitled to have from that witness' testimony, and would be entitled to a reversal of the judgment on that ground alone.

II.   The second instruction given for the plaintiffs essays to give the jury to understand that although the plain-

tiffs' child was herself guilty of negligence which contributed to her death, yet, if by the exercise of the proper care the gripman would have seen her in time to have averted the accident, and failed to do so, the defendant is liable.

Assuming that that is a correct doctrine, the modifications of the court makes the instruction self-contradictory: in one clause the high degree of care required by the city ordinance is imposed on the gripman, and in the other only ordinary care.

It was the duty of the gripman in this case to have exercised "a vigilant watch for persons on foot, especially children, either on the track or running towards it, and on the first appearance of danger to such persons" to have stopped the car "in the shortest space and time possible." The instruction should have been to the effect that if the gripman by the exercise of that high degree of care would have seen the child in time and could have saved it notwithstanding its own negligence, the defendant would be liable.

It is the placing of the two terms "vigilant watch" and "ordinary care" in juxtaposition, that makes the instruction apparently self-contradictory and misleading. The natural inference to be drawn from its reading is that there is a difference between a vigilant watch in the one instance and ordinary care in the other. But if the jury had been properly instructed in the meaning of the term ordinary care, there would really be no conflict and nothing misleading. The demand for ordinary care requires of a man the full performance of his duty under the particular circumstances. In the case at bar it requires of the gripman the exercise of that high degree of care that the ordinance mentions, and of the child it required that degree of care which in the ordinary experience of mankind is to be expected of a girl nine years old just dismissed from school at the noon recess.

The Maryland Court of Appeals, discussing the subject of ordinary care, have said: "It should not be forgotten,

however, that these terms are comparative, and always bear a direct relation to the particular circumstances of each case. The increasing probabilities of danger require a corresponding increase of care and vigilance to avoid it. 'The degree of vigilance which the law exacts, by the requirement of ordinary care, must vary with the probable consequences of negligence, and also with the command of means, to avoid injuring others, possessed by the person on whom the obligation is imposed. Under some circumstances a very high degree of vigilance is demanded by the requirement of ordinary care. Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight.' [Kelsey v. Barney, 2 Kern. 425.] And it may be said, in general, that any failure by one engaged in the pursuit of his own occupation or business, to observe precautionary rules or regulations established by competent authority, to guard against accidents and prevent injuries to others, is in legal contemplation, a want of ordinary care." [Railroad v. Kerr, 25 Md. loc. cit. 531.] "He who does what is more than ordinarily dangerous, is bound to use more than ordinary care, that is to say, it will require greater care under those circumstances to amount in law to ordinary care than it would if the undertaking were less hazardous." [Beach, Cont. Neg. (3 Ed.) sec. 21.]

Therefore the definition of the term ordinary care given in the fourth instruction for defendant was not sufficient under the facts of this case, and for the purpose of enlightening the jury as to the meaning of the term as used in the modification of the plaintiffs' second instruction.

III. The doctrine upon which the instruction disposed of in the foregoing paragraph is founded, that is, the liability of defendant notwithstanding plaintiff's own negligence

under certain circumstances, has been so often declared by the courts of this State, and of other States, that it is thus recognized in this opinion; but the writer has never been able to understand the rationale of it. To attempt to reason it out on the principles on which the law of negligence is based leads to a self-contradiction of those principles, from which the only escape is in an effort to divide negligence into degrees; and to attempt to apply the doctrine to any given case is to attempt to ascertain to what extent the negligence of the one or the other operated to produce the result. Take the case of a man walking on a long high railroad trestle—a very careless and dangerous undertaking—a train comes and the engineer sees the man in ample time to stop before it reaches him, the engineer knows the man can not get off the track yet he runs his train on and over him. The law of negligence has nothing to do with that case.

The Supreme Court of Connecticut have said: "If in the enjoyment of their lawful rights by two persons, at the same time and place, a reasonable care is exercised by both, and an injury accrues to one of them, it must be borne by the suffering party as a providential visitation. If such care is exercised by neither party, and an injury accrues to one of them, he must bear it, for he was himself in fault. And we hold that when the gist of the action is negligence merely, whether gross or slight, the plaintiff is not entitled to recover when his own want of ordinary, or reasonable care, has essentially contributed to his injury; because he is himself in fault, and because of the difficulty, if not impossibility, of ascertaining in what proportions the parties respectively, by their negligence, have contributed to the production of the injury, and whether it would have been produced at all, but by the combined operation of the negligence of both. When the injury is intentional, and designed, other considerations apply." [Neal v. Gillett, 23 Conn. loc. cit. 443.]

That is the whole law of contributory negligence in a

nutshell.   But what is said in this paragraph must be taken as an expression of the opinion of the writer only, and not of the court.

IV.   When the plaintiff's declaration is that defendant was guilty of negligence and that negligence caused the injury in question, and the defendant's plea is that the plaintiff was himself guilty of negligence contributing to cause the injury, the burden of proving the defendant's negligence and its consequence is on the plaintiff, and the burden of proving the plaintiff's negligence and its contribution to the injury is on the defendant.   If in the trial of such a case the plaintiff's own evidence shows that he was guilty of negligence that contributed to his injury, the court should take the case from the jury. In that case the court does not weigh the plaintiff's evidence of defendant's negligence and pronounce it insufficient, but it takes the plaintiff's evidence of his own negligence at its face value and passes judgment of nonsuit upon it.

But whenever it is a question to be submitted to the jury, then the plaintiff must support his declaration and the defendant must support his affirmative plea.   Therefore it is wrong to instruct the jury that if they find that the defendant was guilty of the negligence charged and that the negligence caused the injury in question, they should find for the plaintiff provided they also find that the plaintiff was exercising the degree of care incumbent on him.   Because the instruction in that form puts the burden of proof on the plaintiff not only to establish the guilt of the defendant but also to establish his own exculpation.

If there has been no evidence tending to show negligence of plaintiff's contributing to the injury, the question should not be submitted to the jury in any shape, but if there has been such evidence then the instruction should be in effect that if the jury find that the defendant was negligent as charged and that negligence caused the injury, they should find for the plaintiff, unless they should also find that the

plaintiff was negligent in the particular charged in the plea and that such negligence contributed to the injury.

The difference in the form of expression is the difference in the location of the burden of proof. For this reason the court's modifications of the plaintiff's third and fifth instructions were erroneous.

V. The ordinance in evidence showed that defendant was authorized to run its cars at a rate of speed not exceeding twelve miles an hour. That is not a license to run the cars at the rate of twelve miles an hour under any and all surroundings. It does not relieve the defendant's servants in charge of its trains of the duty of holding them in such control that they can stop them in the shortest time and space possible on the first appearance of danger observable by the vigilant watch the ordinance requires them to keep.

If when the train in question approached Marine avenue there was a flock of school children on the street he should have regulated the speed of his train and handled the appliances for its control, as one capable of handling with skill such a machine and mindful of his responsibility would have done; and if he failed to do so the defendant would not be excused from the consequences by the mere fact that he was running the train within the limit of speed allowed by the ordinances. Therefore the fourth instruction asked by the plaintiff expressed the law as plaintiffs were entitled to have it declared, as far as it went. But inasmuch as it covered the whole case it was defective because it omitted the issue relating to contributory negligence of the deceased child, therefore the court committed no error in refusing it.

VI. Instructions are to be understood as applied to the facts of the case. Therefore when the court gave instruction numbered 3 for defendant which contains this expression: "that defendant the St. Louis Railroad Company, had the right to run its train, at Lemp avenue and approaching it, at 12 miles an hour," it meant that the railroad company had the right to do so then and there and under the

Schmidt v. St. Louis Railroad Co.

circumstances that culminated in this accident.    The court
doubtless did not intend that, but that is what it means,
and it was error to have so given it.

The same instruction also in submitting the question of
the child's contributory negligence to the jury assumes that
she did the act charged and submits only the question of
whether or not in doing so it was to be considered negligence
in one of her age and capacity.    That was error.

VII.    The eighth instruction given for defendant was
leveled at the little girl Minnie Hartung, and could have been
understood as referring to no one else.

It is also unsound in the legal proposition stated.    It is
in effect that if a witness on different occasions has given
testimony on the same subject and the statements of the
witness on one occasion are different from those made on
another and no satisfactory reason is advanced for the dif-
ference the jury are justified in disregarding the whole of the
witness' testimony.

The fartherest the court can go in that direction without
trenching on the provision of the jury, is to instruct them in
effect that if they believe from the evidence that any witness
has willfully sworn falsely as to any material fact in the
case, they may if they see fit for that reason disregard the
whole of that witness' testimony.    But even in the giving of
that instruction, the court should act with caution.    It is not
to be given in every case, and should never be given unless
the trial judge strongly suspects that willful false swearing
has been done in the case.    The giving of that instruction
in this case was error.

The judgment of the circuit is reversed, and the cause
remanded to be retried in conformity to the law herein ex-
pressed as the opinion of the court.    BRACE, P. J., concurs in
the result, and in paragraphs 1 and 7; ROBINSON, J., concurs.
MARSHALL, J., concurs in paragraph 7, and dissents from the
rest.