88    123
102   478

MARY E. HANSELMAN, Respondent, v. ST. LOUIS &
    MERAMEC' RIVER RAILROAD COMPANY, Ap-
    pellant.

### St. Louis Court of Appeals, March 26, 1901.

1. **Personal Injuries: NEGLIGENCE.** The facts in the case fail to show any negligence upon the part of defendant, and consequently no liability.

2. ———: ———: INJURY AS TO DEFENDANT A MISHAP. Even though defendant might have, by reasonable diligence, discovered the perilous position of plaintiff before she was struck, yet, in order to make defendant liable it must appear that defendant could have, by a reasonably prompt use of the means at hand, prevented the injury, which in this case the testimony fails to show, and the accident so far as defendant is concerned, was a mishap.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

REVERSED.

### STATEMENT OF THE CASE.

This suit is for injuries sustained by plaintiff after alighting from a car of defendant at the intersection of Knox and Manchester avenues, and proceeding to cross the tracks of defendant, when she was struck by a car going in the opposite direction from the one upon which she had been carried.

The defense was contributory negligence. The testimony of plaintiff is, that she is sixty-eight years old and had been down town on the second of February, 1898, and took defend-

ant's west-bound car to be conveyed to the crossing of Knox and Manchester avenues, which was three blocks from her residence. She then testified, to-wit:

"Q. Before you started? A. I stopped to look to see if there was a car coming, and I suppose my car had got about forty feet or so before I started across the track.

"Q. Your car had gotten away—the one you had gotten off of—about forty feet? A. Yes, sir.

"Q. Then what did you do? A. Well, then I started across the track, because I didn't see any car coming.

"Q. Well, how many tracks were there, there? A. Two.

"Q. How far is it from one track to the other—between the two tracks? A. About seven feet, I think.

"Q. Seven feet between the tracks? A. Yes, sir, six or seven feet.

"Q. Now, after you started south, you say you looked out, and you didn't see another car coming? A. Yes, sir.

"Q. Coming from either direction? A. Yes, sir.

"Q. How, in walking across the tracks, did you walk, slow or fast? A. Well, I went rather fast.

"Q. What was the first—did you hear any bell? A. No, sir, I did not.

"Q. I will ask you, madam—at that time was your hearing seriously affected as it is now? A. No, sir.

"Q. Could you hear then? A. I could hear a bell a long distance.

"Q. Now, what was the first impression or sensation—what was the first you knew that a car was hitting you? A. When the car struck me.

"Q. Did you know anything about the approach of a car until it hit you? A. Not until after I was picked up.

"Q. But I mean before; did you know anything about

the approach of a car at all, until it struck you? A. No, sir.

"Q. The first you knew that you had been struck was after you were picked up? A. Yes, sir; well, I presumed something of the kind had happened.

"Q. You didn't know exactly then—clearly—what had happened? A. No, sir; not for a minute or two.

"Q. Well, when you were picked up where were you at? A. I was about fifteen feet from the track."

On cross-examination she testified, to-wit:

"Q. What time of day did this thing happen? A. It was near dinner hour; somewhere about there.

"Q. On the second of February? A. Yes, sir.

"Q. 1898? A. Yes, sir.

"Q. It was bright daylight? A. Yes, sir.

"Q. What sort of a day was it, do you remember? A. It was a very cold blustering day.

"Q. Was it stormy or clear? A. No, sir; it was clear.

"Q. Perfectly clear? A. Yes, sir.

"Q. Very cold? A. Yes, sir.

"Q. So you could have seen this car perfectly well if you had looked there, couldn't you? A. I think I could; yes, sir.

"Q. You saw the car that was leaving, did you? A. Yes, sir.

"Q. Until it got forty feet off? A. About that, yes, sir.

"Q. Couldn't you have seen the other coming if you had looked there, don't you think? A. I don't know how it happened; I didn't see it. I could have seen it, I suppose, if it had been coming a little further this way.

"Q. Now, the fact is, that you didn't notice when the car was coming to you until it struck you, did you? A. What is that?

"Q. You didn't see the car until—? A. No, sir.

"Q. Until it hit you? A. No, sir; I did not.

"Q. Don't you think if you had looked in the direction the car was coming you would have seen it? A. I did look in that direction.

"Q. Well, it struck you, you are sure of that? A. I have my idea why I didn't see it, now, since all this happened, but I have never expressed myself.

"Q. What is it; what is your idea? A. I don't know whether it would hurt my case to tell it.

"Q. Well, tell the facts? A. Since this occurred, I have thought about it, and I think the two cars came together, and I took the car that was coming this way for the one that was going the other way. I think they came together.

"Q. That is your best impression? A. That is what I think.

"Q. Where do you think they passed each other? A. About forty feet above me; from where I got off.

"Q. About forty feet; is that about where they passed? A. Yes, sir.

"Q. Then, you took a glance at the car, you saw your car, and saw that they were about passing? A. I think so.

"Q. Therefore, you didn't notice the car? A. No,—.

"Q. Because you didn't look again, after that moment? A. I didn't look again at all. If I had looked a second time —I didn't look twice up the track before I attempted to cross the other track to go home.

"Q. And when you saw this car—your own car—about forty feet, you are now satisfied that the other car was passing about the same time; is that right? A. I think so.

"Q. And, then, the car must have been forty feet away that hit you, according to your idea; is that it? A. Well, —

"Q. Now, all that time you didn't look at the car again until you were hit? A. Didn't look again?

"Q. I say you couldn't have looked again, because you

would have seen the car ?   A.   Yes, I looked the second time;
I first thought it was the car I got out of.

"Q.   You now think you saw the car that hit you— ?   A.
No, sir; I didn't say I thought I saw it; I said I thought per-
haps that is the way it might have happened.

"Q.   Looking west, could you see two cars at a distance of
forty feet ?   A.   I don't know whether there was or not.

"Q.   Don't you know that it must have been the car com-
ing this way, or it couldn't have hit you in that short time ?   A.
It may have been; I can't say positively it was so, but I have
my idea that way.   I didn't think the car—I thought maybe
two cars came close together, and that is what misled me."

Plaintiff further testified that the track in the direction
whence the car approached which struck her was level and
straight for a quarter of a mile.   There was no evidence as to
the distance within which the car might have stopped after
plaintiff reached a point of danger in attempting to cross the
tracks and when she could have been observed by the motorman
or conductor in charge of the train, had they exercised reason-
able diligence.

The court overruled defendant's demurrer to the evidence.
The jury rendered a verdict for three hundred dollars, from
which defendant appealed.

*McKeighan, Barclay & Watts* and *Robt. A. Holland, Jr.,*
for appellant.

(1)   The plaintiff's claim is for a breach of defendant's
undertaking as a common carrier in view of the fact that plain-
tiff was a passenger upon defendant's car; whereas, the proof
shows that, if plaintiff has any cause of action whatever, it was
not as a passenger, but as an ordinary citizen, the relation of
passenger and carrier having ceased at the time when plaintiff

was injured. Buzby v. Company, 126 Pa. St. 559; Smith v. Railway, 29 Oregon, 539. (2) Plaintiff was not in danger as she approached the track. Bunyan v. Railroad, 127 Mo. 12; Sanders v. Railroad, 147 Mo. 411; Boyd v. Railroad, 105 Mo. 371; Watson v. Railroad, 133 Mo. 250. (3) It is not admissible for plaintiff to recover upon a different cause of action from that stated in her petition. Price v. Railroad, 72 Mo. 414; Bartley v. Railroad, 148 Mo. 124; O'Brien v. Loomis, 43 Mo. App. 29; Buffington v. Railroad, 64 Mo. 246; McManamee v. Railroad, 135·Mo. 447; Waldhier v. Railroad, 71 Mo. 514. (4) Under plaintiff's own admissions, her negligence, directly contributing to her injuries, is an absolute bar to her recovery under numerous decisions of the Supreme Court. Butts v. Railroad, 98 Mo. 272; Watson v. Railroad, 133 Mo. 250; Payne v. Railroad, 136 Mo. 562; Maxey v. Railroad, 113 Mo. 1; Lane v. Railroad, 132 Mo. 4; Schofield v. Railroad, 114 U. S. 615; Boyd v. Railroad, 105 Mo. 371; Kelsay v. Railroad, 129 Mo. 362; Coatney v. Railroad, 151 Mo. 35; Kreis v. Railroad, 148 Mo. 321; Loring v. Railroad, 128 Mo. 349.

BOND, J.—The facts as detailed by the plaintiff are susceptible of only two constructions with reference to her conduct at the time she crossed the track whereon one of defendant's cars was approaching the point of crossing. Either she wholly failed to look down the track which was level and straight for a quarter of a mile, and hence, did not see the incoming car; or if she looked at all, before making the crossing, the approaching car had gotten so close that it shut off her vision of the car on the parallel track, which she had just left, wherefore she mistook the coming for the departing car and so ventured upon its tracks. Upon neither hypothesis can any negligence be imputed to the defendant unless it had been further shown that, after an opportunity to discover plaintiff's

peril, the servants of defendant had neglected to use all appliances provided for checking the speed of the car and stopping it before a collision could take place. As the record is entirely bare of any testimony tending to show that it was in the power of the persons in charge of defendant's car to arrest its speed and stop the train, after they might, by reasonable diligence, have become aware of the perilous position of the plaintiff thus preventing a collision, we are constrained to hold that the accident, so far as defendant is concerned, was a mere mishap, free from negligence on its part, for which no cause of action could arise. And even if we take the most favorable view which the version of the occurrence, given by the plaintiff, affords in her behalf; that is, that she did look or glance down the track before proceeding to enter upon it and that she observed a car which she supposed was the one going west, from which she had just disembarked, and hence, thought she might safely cross the other of the two tracks running alongside, still we are constrained to conclude, that this misadventure on her part, whether occasioned by a defeat of vision or otherwise, could not create a liability against defendant, under the facts shown in this record.

Our conclusion is that the judgment in this case must be reversed. All concur.