JAMES WALTER HUTCHINSON, Respondent, v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 9, 1901.

1. **Negligence:** CONTRIBUTORY NEGLIGENCE. The doctrine, known as the humane doctrine, prevails in this State and is to the effect that the plaintiff may recover in an action for negligence, notwithstanding his negligence directly contributed to his hurt, if the defendant by ordinary care could have prevented the accident.

2. ———: ———: ———: INSTRUCTION. And in the case at bar, the only ground of recovery submitted to the jury was the alleged negligence of defendant's motorman in not using ordinary care to avoid injuring plaintiff after he knew, or by proper care might have known, the latter was in a dangerous position, and an instruction presenting this view of the case to the jury was properly given.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The plaintiff was injured by a car of the defendant company at the crossing of Barron and Manchester avenues in St. Louis. From Kings Highway to said crossing is about one-fourth of a mile; the track is straight and the view unobstructed the whole distance. The grade dips slightly from Kings Highway westward to a bridge on Manchester avenue, and from there to the crossing, one hundred and fifty yards further, is level. The car approached the plaintiff from behind, as he was driving west in a one-horse wagon, colliding with the wagon on the crossing as plaintiff was turning south to drive into Evans & Howard's brickyard. The avenue is sixty feet wide there. The defendant's two tracks were on its south side, leaving a driveway some thirty or more feet wide for vehicles on the north. There is a strong conflict in the testimony as to whether plaintiff drove towards the crossing with the left wheels of his wagon inside the north rail, or whether the horse and wagon were entirely north of the track until about the time he turned south. Plaintiff testified that he continued on the track, in the manner first mentioned, from a point "between three hundred or three hundred and fifty yards" east of where the car struck him. Witnesses corroborated him.

The testimony for the defense tended to prove he travelled north of the rails until he had either reached or was near the crossing, then turned to the left and drove on to the north track, when the car collided with the rear of the wagon. What is undisputed is, that he did not look back to see if a car was

coming before attempting to cross, nor, according to his own tes-
timony, after he drove onto the track three hundred yards or
more to the east.    He drove very slowly.    There was testimony
tending to show the motorneer in charge of the car was watch-
ing a train on the railroad just south of Manchester avenue,
which inattention prevented him from observing plaintiff's
perilous position until the car was within twenty or thirty feet
of the wagon.    He was required, by a city ordinance, to be
watching the track.

The evidence was conflicting about the warning.    The
motorneer swore he rang the gong continuously for three or
four hundred feet; the plaintiff's testimony was that he first
sounded it when about twenty feet from him.    The motorneer
also claimed he was running three or four miles an hour,
without power, which he had not turned on after reaching the
foot of the grade at the bridge, because he saw the wagon there
and did not know but what the plaintiff "might pull in there
as wagons generally do."    He said, too, a car could be stopped
at that speed in from thirty-five to fifty feet.    Other testi-
mony puts the speed of the car higher, but none beyond the
limit prescribed.

The plaintiff was entitled to the use of the entire street
and, therefore, was not a trespasser, while the defendant was
entitled to the right of way.

Failure to signal the car's approach was omitted from
the instructions.    The only ground of recovery submitted to
the jury was alleged negligence of the defendant's motorneer
in not using ordinary care to avoid injuring plaintiff after he
knew, or by the proper care might have known the latter was
in a dangerous position.    One instruction was given that plain-
tiff was guilty of contributory negligence if he failed to look
back at reasonable intervals to see if a car was coming and to
get off the track if he saw one.    This was practically telling

them he was actually negligent, for he admitted he did not look back.

*McKeighan, Barclay & Watts,* and *Robert A, Holland, Jr.,* for appellant.

(1) The trial court erred in giving plaintiff's instruction to the jury, because the petition charges that plaintiff was "without any fault or want of diligence or care" in the circumstances attending his injury; whereas, the theory of plaintiff's instruction, given to the jury, was the so-called "humanitarian rule," authorizing recovery by plaintiff without reference to his exercise of care. Such an issue could not properly be submitted under the pleadings, and hence, plaintiff's first instruction was erroneous. Plaintiff was crossing the track when struck; he was not driving along it "west" as charged in his petition. O'Brien v. Loomis, 43 Mo. App. 29; Buffington v. Railroad, 64 Mo. 246; Waldhier v. Railroad, 71 Mo. 514; McManamee v. Railroad, 135 Mo. 440. (2) Plaintiff's first instruction was in conflict with correct instructions given for defendant. The giving of conflicting instructions is error. Buel v. Transfer Co., 45 Mo. 562; Frank v. Railroad, 57 Mo. App. 181. (3) The plaintiff's first instruction is erroneous in submitting to the jury for a finding, the question whether, from the time when the danger of plaintiff might have been known to defendant's agent in charge of the car, there was sufficient time to stop the car by th euse of ordinary care; whereas, there was no evidence to support plaintiff's contention on that point. Sinclair v. Railroad, 133 Mo. 233.

*John E. Bowcock* and *G. N. Fickeissen* for respondent.

(1) The court properly submitted the case to the jury.

Plaintiff pleaded that after he had safely gotten on the track of defendant, defendant, by keeping the watch required and by stopping the car as soon as danger to plaintiff was apparent, could have avoided the collision. Plaintiff proved the ordinance, its acceptance, and the negligence on part of defendant, as well as the failure of defendant to give plaintiff any warning of their approach. Klockenbrink v. Railroad, 81 Mo. App. 351; McAndrews v. Railroad, 83 Mo. App. 233; Chamberlain v. Railroad, 133 Mo. 587; Reardon v. Railroad, 114 Mo. 406. (2) The negligence, if any, of plaintiff in not looking back for approaching cars after he had driven on the track at such a distance ahead of the car that the motorman, by ordinary care, could have stopped the car after he discovered the plaintiff in a position of danger, was not the proximate cause of the collision. McAndrews v. Railroad, 83 Mo. App. 233. (3) Plaintiff's first instruction correctly stated the law. The averment in the petition that plaintiff was without fault, placed him in no worse position than defendant's plea of contributory negligence. Hudson v. Railroad, 101 Mo. 13.

GOODE, J.—The general principle on which the case was referred to the jury, commonly styled the humane doctrine, is well supported by authorities. It is accepted in some form in most of the State and Federal jurisdictions. So far as this court is concerned, the rule is no 'llonger debatable. All uncertainty about it being a substantive part of the law of torts has been set at rest by recent deliberate pronouncements of the Supreme Court. The authority of the rule is not impugned by the learned counsel for the appellant, who only insist that it is inapplicable to the cause in hand on account of the plaintiff's clear contributory negligence which continued to the moment of the collision. This contention requires a brief examination of some cases in which the doctrine has been applied.

They divide into two classes and the disputation which has raged over it has been on the border line between the two. As enforced in one class, the rule has always seemed to the writer to be a phase of the doctrine of proximate cause, consistent with the theory of the entire law of negligence and without which the system would be incomplete. These instances are where the plaintiff's negligent act was detached from the injury so that the defendant's want of care was the sole active agency in inflicting it. When an accident happens under such circumstances, the plaintiff ought not to be refused a recovery because, though remiss, his fault does not contribute to the injury. Illustrations of this class of cases are numerous in the books, beginning with the one from which all the others proceeded. Davis v. Mann, 10 Mees. & W. 546, where the plaintiff had carelessly fettered his beast in the highway and the defendant's servant drove over him. It is manifest that the original negligence of the owner was separated from the injury, which was proximately caused solely by the defendant's tort. Another apt illustration is found in the Reardon case (114 Mo. 384), where the plaintiff carelessly went on the railway track and fell in endeavoring to get off when he saw a train coming. It was held that if the engineer failed to employ ordinary care to stop the train when he saw him prostrate, the company was liable. The same ruling has been made in actions where plaintiffs had fallen asleep on tracks or become fastened in cattle guards or switches or where the person hurt was a child or otherwise not of full legal capacity (Gabel v. Railway Co., 60 Mo. 475). The doctrine is exclusively met with, so far as our reading has shown, in controversies arising from injuries due to violent impacts and collisions. The above instances exemplify its use in such cases where, properly expounded, it does not clash with the doctrine of contributory negligence, though some of the applications made have laid it open to that charge.

The reconciliation and harmonious working of the two rules may be achieved by considering closely whether the defendant's carelessness was alone the proximate cause of the injury. If only the defendant's was the proximate cause, the plaintiff, while guilty of negligence, was not guilty of contributory negligence; his failure to use care did not proximately contribute to the mischief. Time elapsed between his wrongful act and the injury, during which the wrongful act of the defendant supervened or entered, as a separate agency, which, by its own independent action, wrought the unfortunate result. If, however, the plaintiff's want of care continues to the instant of the accident, or so near the instant as to be immediately influential in producing it, he is as much to blame as the defendant, and if the latter is compelled to compensate him, the theory of the law of negligence is thus far abandoned. When it is deemed expedient to allow a recovery under such circumstances, it must be done as a measure of public policy. The rule then becomes, in fact, an exception to the law of contributory negligence, as was said in Kelly v. Railway Co., 101 Mo. 67. The real basis of it, as it obtains in many jurisdictions in respect to injuries by cars and locomotives when the injured individual was negligent to the very instant of the collision, is to be sought, on an ultimate analysis, in its supposed necessity for the public security. The guilt of the plaintiff is excused, while that of the defendant is punished. In such instances, its administration in cases of injuries by cars and engines is attended with serious difficulty, viz.: determining when the employees of the railway company may be justly said to have had notice that the injured party was in a position of danger. Persons frequently remain on railway tracks when a car or train is approaching, until it would be impossible to stop it in time to avoid striking them, but easily get off themselves in time. Accustomed to take care of their safety where cars are con-

stantly moving, they grow dexterous in avoiding them and run risks. Engineers and motormen have a right to presume an individual travelling on the track will leave it, and to act on that presumption until his situation becomes alarming. Riley v. Railway Co., 68 Mo. App. l. c. 661. Just when this happens must often be largely conjectural, which circumstance weighs heavily with many against the rule in question.

The doctrine in its wider scope prevails in this State. The plaintiff may recover, notwithstanding his negligence directly contributed to his hurt, if the defendant by ordinary care could have prevented the accident. In the Morgan case (60 S. W. Rep. 195), where a recovery was sustained, this language is spoken: "There can be no doubt, under the evidence, that the death of the plaintiff's husband resulted from the negligence of the defendant's servants in charge of the train, *and the negligence of the deceased himself contributing thereto.*" Similar expositions have been made in many other cases. Schmidt v. R'y Co., 50 S. W. 921; Klockenbrink v. Railway Co., 81 Mo. App. 351; Cooney v. Railway Co., 80 Mo. App. 226. They seem in conflict with the opinion in Hogan v. R'y Co., 150 Mo. 36. We must follow the latest controlling decision. The Morgan case was decided in Banc.

In view of the strong utterances to be found in the foregoing authorities, it is useless to descant on the wisdom or fallacy of the rule, to explore its foundation, extol its justice, or regret its hardship. Our unmistakable duty is to enforce it as we would any other part of the law. The present case differs in no material respect, calling for its application, from the Morgan or Cooney cases, supra, which became therefore controlling precedents. The Morgan case is stronger because there the engineer did not see the deceased, who was flagrantly careless to the time the engine struck him; here the motorman did not see the plaintiff. The court below did not err in re-

fusing an instruction to find the issue for the defendant, but rightly submitted them. This practically disposes of the case.

Complaint is made that error was committed by refusing two instructions, the effect of which was that the issues should be found for the defendant if the jury believed the plaintiff was not driving on the railway until he attempted to drive across it at the intersection of the two avenues. The answer is that two others were given which fully covered the ground.

It may be remarked that there is a material difference between the case of a plaintiff who suddenly drove on a railroad track in order to cross it and that of one who has been driving along the track for sometime and then attempts to drive off. In the first instance, the railway operatives may have no such warning nor chance to take precautions against striking him as they are likely to have in the latter, where he has been in full view for awhile, with the possibility of his situation becoming dangerous obvious to them.

The direction as to the measure of damages is criticised, principally because it told the jury that in no event should their "verdict be for more than ten thousand dollars, the amount sued for," when in fact the amount sued for was twenty thousand dollars. It is inconceivable how this simple mistake could have harmed the defendant. The verdict was for eight hundred dollars and there is no claim that it was excessive.

We find no error in the record. The judgment is affirmed. All concur.