DALE, by next friend, BAKER, Respondent, v. HILL-O'MEARA CONSTRUCTION COMPANY, Appellant.

**St. Louis Court of Appeals, November 1, 1904.**

1. **FELLOW-SERVANTS.**  The employee of a subcontractor and an employee of the original contractor are not fellow-servants.

2. **CONTRIBUTORY NEGLIGENCE: Prior Negligence.**  A workman shoveling dirt about a building was guilty of negligence in failing to notice that a carpenter was working above him on the building and sawing off ends of rafters which might fall and cause him injury; but such negligence did not prevent his recovery for injuries received by a falling rafter, where the carpenter who let it fall, knew, or by the exercise of ordinary care could have known, of the workman's peril so as to avoid it.

3. **NEGLIGENCE: Assumption of Risk.**  Assumption of risk rests upon contract, and an employee of a subcontractor does not assume the risk to himself involved in the original contractor's method of conducting a different branch of the work on the same job, there being no contractual relation between them.

4. **DAMAGES: Excessive Verdict.**  Where, in an action for personal injuries, the evidence showed plaintiff's hand was badly lacerated and caused him considerable pain and some loss of earnings, a verdict for $200 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Collins & Chappell* for appellant.

The law is well settled that one who has failed to exercise ordinary care to insure his own safety cannot recover as against one who owed him a duty of ordinary care to protect him from the effects of his negligence. Carroll v. Railroad, 107 Mo. 653, 17 S. W. 889; O'Donnell v. Patton, 117 Mo. 13, 22 S. W. 903; Harff v. Green, 168 Mo. 308, 67 S. W. 576.

*Christian F. Schneider* for respondent.

(1) If the contributory negligence charged against plaintiff was remote, and the negligence of defendant's servant was the efficient cause of the injury defendant is liable. Meyer v. Railroad, 59 Mo. 223; Miller v. Railroad, 5 Mo. App. 471; Frick v. Railroad, 75 Mo. 542; Klockenbrink v. Railroad, 81 Mo. App. 351, 355. (2) But, even if the testimony of defendant's witness, the carpenter, is true, the defendant is liable. For "Although plaintiff may have been guilty of negligence, yet if defendant's agents or servants . . . saw the perilous position of plaintiff . . . and could have avoided injury, . . . the defendant is liable." Moore v. Rapid Transit Co., 126 Mo. 277, 29 S. W. 9; Reed v. Railroad, 50 Mo. App. 504; Harper v. Railroad, 70 Mo. App. 604; Moore v. St. Louis Transit Co., 95 Mo. App. 728, 75 S. W. 699. (3) Instructions offered by appellant were properly refused because the doctrine of "assumption of risk" does not apply to the case at bar, for the reason that the respondent was not an employee of appellant.

### STATEMENT.

The defendants were contractors for the erection and construction of the Mines building on the grounds of the Louisiana Purchase Exposition and in August, 1903, were engaged in constructing that building. Maloney & Morris contracted with defendants to do certain grading about the building. The plaintiff was employed as a laborer by Maloney & Morris and on the third day of August, 1903, was engaged in shoveling dirt and throwing it under the Mines building. At this time the carpenters at work on the building were putting on the rafters, lining them up and sawing off their ends. These rafters were two by fourteen inches and twenty-eight feet long, and projected or over-

hung the wall of the building about fifteen feet. About thirty of these rafters were put in place at one time and secured from turning by nailing on lathing. They would then be lined and the carpenters would go out to the ends and saw them off. This was done by holding on with one hand and sawing with the other. The wall of the building was from sixty-five to seventy feet high, and sawing off the ends of the rafters was described by the witnesses as being very dangerous work. There was a roadway along the side of the building over which teams and pedestrians occasionally passed. To avoid striking and injuring these by the ends of the rafters falling on them as they were sawed off, the carpenters would hold the sawed off ends and throw them into the road, but occasionally a piece would get away from the carpenters and fall. Such a piece fell on plaintiff and injured him while he was shoveling dirt under the building. For this injury he sued and recovered a judgment of two hundred dollars. Defendant appealed.

Plaintiff was hurt about eleven o'clock in the forenoon. He testified that he knew the carpenters were putting on the rafters and sawing off their ends, but when he went to work in the morning they were seventy-five feet away from him and he did not think they would reach the point where he was at work before noon and he did not notice them afterwards; that he was working with a shovel, throwing dirt under the building and did not hear any one call, "Look out below," and did not know the carpenters were working over him until after he was struck by the piece of falling timber. The carpenter who sawed off the piece that struck plaintiff, testified as follows:

"I had been working at that work ever since we ran out the first one, about six weeks, came clear around the building, and those men that had been filling around the building had been warned repeatedly to watch out for our men up there. It was dangerous.

work. We didn't know any time but something would get away from us and fall, and that morning they had been warned, I warned them, two other men had warned them about it, and our foreman had warned them. . . .

"At that time this man was down there, and he was standing there talking to another man, leaning on his shovel, those men were standing in that position close together, leaning on their shovels, when the foreman was not in sight, and they stood talking. For over an hour previous to that time pieces had been sawed off and throwed down, and the men knew it, the men were watching us. Every time a piece was thrown down it made such a noise that it could be heard all around on that side of the road, and they would look up and watch us when we would be working. Several times it was impossible for us to hold a piece, if we did we run chances of falling, and naturally, self-preservation is the first law of nature.

"Mr. Collins: Now, tell the court the position you were in when you were sawing off the particular piece that you let fall? A. Well, there was one rafter between me and the one I was sawing, because if I had sat right on that I would have been too close, I couldn't have worked. Well, I had to hold on with one hand until I got that particular one sawed through, and then I would reach over, if possible, to hold on to it, but always when we were caught that way we would call out, 'Look out below.' . . .

"Q. You say you were sitting where? A. I was sitting on next but one of the one I was sawing. Now, when I got started on this joist—I done all the lining and marking, and this was a split joist and I noticed it —

"Mr. Collins: Where was the joist split? A. On the outer edge, and I had to saw off about eight inches on the one end. it was an extra long one and was split.

Q.   And the split ran lengthwise of the board, did
it?   A.   Yes, sir, and the time I threw it down, the
man that got hurt was standing there with this other
man, at the time I threw that board down, and it
landed not over ten feet from where he was at, and at
the time I threw that down I called out 'Lookout be-
low,' because teams were passing at the same time, and
the men looked up and saw me, the sewer man looked
up and saw me when the board hit the road.   Well,
this other piece, I couldn't hold it without losing my
balance, and just about the time I got it sawed through
I hollered, 'Lookout below,' and it fell, I couldn't hold
it, but I called out five or six times before that broke
loose, to stand from under.   Those two men were so
busily engaged in talking that they couldn't hear, I
think, and when it fell it hit that man on the head, and
he ran in towards the building, and it glanced from his
head on to his knuckles.   When the policeman came
around they had picked up a piece of wood, probably
two by six feet long, and said that was what had hit
him.   Well, I called down to the policeman that it
wasn't, but the piece that hit him was a small piece,
and it fell in close to the building where they were
throwing their dirt.   That man ran away.   It didn't
knock him to his knees, it didn't knock him senseless,.
nor nothing.''

Defendant, at the close of plaintiff's case and
again at the close of all the evidence, offered an instruc-
tion to the effect that under the pleadings and the evi-
dence plaintiff was not entitled to recover, which in-
struction was denied.   The following declarations of
law, the first of which was given for plaintiff, those
following being asked by defendant, but refused, indi-
cate the view of the court as to the law of the case:

"The court declares the law to be that even if it
finds from the evidence herein that the plaintiff was
negligent in being at the place he was injured, yet if
it further finds from the evidence that the servant of

the defendant who caused or permitted the board or piece of wood to strike or fall upon plaintiff, if it so finds, knew, or by the exercise of ordinary care might have known, that plaintiff was at the time at said place, and, by the exercise of ordinary care as defined in the other instructions herein, could have avoided injury to plaintiff, then defendant is liable and judgment must be in favor of plaintiff.''

"1. The court instructs the jury that if they believe from the evidence in this case that the plaintiff knew, or by the exercise of ordinary care and prudence, would have known that a carpenter or carpenters was or were working over or nearly over the place at which plaintiff was working at the time of his injury, and that said carpenter or carpenters was or were engaged in sawing off timbers, and occasionally dropping pieces of same, and that the place where plaintiff was working was a place of danger, but that plaintiff nevertheless continued to work in said place, then and in that case plaintiff assumed the risk to which such danger subjected him and is not entitled to recover in this action, and the jury will in that event return their verdict in favor of the defendant.

"2. If the jury believe from the evidence that the place in which plaintiff was working at the time he was injured was a dangerous place, and one in which persons were exposed to danger and liable to be injured by falling pieces of timber, and was known to be dangerous to the plaintiff, or that plaintiff by the exercise of ordinary care and prudence could have known such danger, then the plaintiff assumed the risk incident to working in such place and was guilty of negligence and cannot recover in this action, and the jury in that event will return their verdict in favor of the defendant.''

The issues were submitted to the court sitting as a jury. A judgment for two hundred dollars was given for plaintiff. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. Plaintiff and the carpenter, who let the piece of timber fall on him, were not working for the same master nor were they under the same supervision. For these reasons they were not fellow-servants. Dixon v. Railway, 109 Mo. 1. c. 423. 19 S. W. 412. The evidence is all one way that the work at which the carpenters were engaged was dangerous to themselves and to any one who might be on the ground immediately under them. The evidence also shows that plaintiff knew, when he went to work in the morning, that the laying of the rafters was progressing in his direction and sooner or later the carpenter would be immediately over him sawing off the ends of the rafters, and when this should occur the place would be dangerous. He testified that he did not think they would reach him before noon and that he did not look up after he commenced to shovel dirt to see where the carpenters were at work. They were in plain sight of him and he could have discovered their whereabouts by merely casting his eyes upward. He failed to do this and we think his own evidence convicts him of negligence. There is evidence that the carpenter, who let the piece of timber fall on plaintiff, was also guilty of negligence. He testified that he called out to persons below, "Look out." There is other evidence that he made no such call at or about the time the piece of timber fell upon the plaintiff. His own evidence shows that the end of the rafter was split and when he sawed through the split the upper part got away from him and fell. If he had looked, he would have seen plaintiff immediately under him and discovered his extreme peril. He should have done this before sawing through the split and taking the risk of the piece of timber getting away from him and falling on plaintiff. The situation required of him the exercise of diligence commensurate with the peril and we think the evidence shows that he did not exercise

that degree of care he should have exercised under the circumstances. Therefore, both the plaintiff and the carpenter may be convicted of negligence. The learned trial judge seems to have come to this conclusion, but declared as matter of law that plaintiff was entitled to recover, notwithstanding his own negligence, if the evidence showed that the carpenter knew or by the exercise of ordinary care could have known of plaintiff's peril and negligently let the piece of timber fall on him. We think this view of the law is correct under the facts in the case. The negligence of plaintiff was prior in time to that of the carpenter and it was omissive, not active. Plaintiff did nothing that directly contributed to his injury and would not have been injured but for the negligence of the carpenter. Where the negligence of both parties is thus related and it appears that plaintiff would not have been injured had defendant's servants used due care, plaintiff may recover. Klockenbrink v. Railroad, 81 Mo. App. 351; Hanselman v. Railway, 88 Mo. App. 123; Hutchinson v. Railway, 88 Mo. App. 376; Edwards v. Railway, 94 Mo. App. 36, 67 S. W. 950; Morgan v. Railway, 159 Mo. 262, 60 S. W. 1035.

2. The declaration of law asked by defendant sought to apply the doctrine of assumed risk to the facts of the case. Some confusion in respect to assumed risk and contributory negligence has arisen in this State on account of loose and unguarded expressions found in some of the opinions of the appellate courts. They are easily distinguished. Assumption of risk rests upon contract. Negligence rests on tort. Assumption of risk is the voluntary act of an ordinarily prudent man who, for hire, takes the chance of a known or obvious danger incident to his employment. Contributory negligence is the casual action of a servant without ordinary care or the omission to do something for his self-protection that an ordinarily prudent person would have done

Plaintiff did not contract with defendant to work when and where he was working at the time he was injured. He was in the employ of Maloney & Morris. He had no contractual relation whatever with defendant and hence there is no foundation for the application of the doctrine of assumed risk to the facts of the case.

3.  Plaintiff's hand was badly lacerated and caused him considerable pain and occasioned some loss of earnings and we do not think two hundred dollars, the damages assessed, are at all excessive. The judgment is affirmed. All concur.