## FRANK SLEZAK, Respondent, v. ST. LOUIS TRAN-SIT COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted October 6,
1909; Opinion Filed October 19, 1909.

1. STREET RAILWAYS: Negligence: Evidence: Failure to Stop.
   In an action for personal injuries resulting from a collision be-
   tween a street car and a steam roller driven by plaintiff, it is
   *held* there was evidence tending to support a finding that the
   motorman of the car, by the exercise of ordinary care, could have
   avoided the collision, after the danger became apparent.

2. ————: Evidence: Opinion Evidence: Rate of Speed: Discre-
   tion of Court.    It was not an abuse of discretion by the court
   to admit in evidence the opinion, as to the rate of speed of a car,
   of a witness, who had only once timed the running of cars,
   nor those of other witnesses who had not timed them, but
   who were familiar with their operation and had frequently ob-
   served them, and whose opinions were based on their observa-
   tions.

3. **DAMAGES: Excessivè Verdict: $2000 Not Excessive.** As the result of the collision, plaintiff suffered injuries to his leg which necessitated four operations to cut away the putrid matter, his shoulder was so injured that he could not lift any weight, the hearing of one ear was almost lost, his leg hurt him constantly and he could not stand on it for any length of time. A physician testified his injuries are permanent. His daily wage, before his injury, was $3.50, and he had been unable to work, as a result of the accident, for nearly two years. He incurred expenses for medicines and physician's services to the amount of $150 or $175. *Held*, a verdict for $2000 is not excessive.

4. **STREET RAILWAYS: Instructions: Use of term "Vigilant Watch."** In an action for personal injuries resulting from a collision between a street car and a steam roller driven by plaintiff, an instruction which permitted a recovery by plaintiff, if the jury found the motorman of the car failed to keep a vigilant watch for vehicles on the track, is not erroneous in the use of the words "Vigilant Watch," especially when considered in connection with an instruction given which defined the term "ordinary care."

5. **INSTRUCTIONS: Refusal: Not Based on Evidence.** An instruction withdrawing an assignment of negligence charging that the car was operated at a high and reckless speed was properly refused, where there was evidence to sustain the assignment.

6. **STREET RAILWAYS: Instructions: Refusal: High and Reckless Speed: Failure to Define.** In an action for personal injuries resulting from a collision between a street car and a steam roller driven by plaintiff, an instruction requested by defendant, withdrawing an assignment of negligence charging that the car was operated at a high and reckless rate of speed, was properly refused, for the reason it failed to define what would have been considered a high and reckless rate of speed under the circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*Boyle & Priest* and *Glendy B. Arnold* for appellant.

(1) There is no evidence in the record that the motorman could, by the exercise of ordinary care, have

avoided the collision after the danger became apparent. Zurfluh v. Railroad, 46 Mo. App. 642; Roenfeldt v. Railroad, 180 Mo. 554; Reno v. Railroad, 180 Mo. 469; Engleking v. Railroad, 187 Mo. 165; Theobald v. Railroad, 191 Mo. 395. There is no certain testimony of persons qualified to speak as to the rate of speed of the car. Theobald v. Railroad, 191 Mo. 395; Helm v. Railroad, 185 Mo. 212. (2) The verdict is the result of passion and prejudice. Spohn v. Railroad, 87 Mo. 74; Lehnich v. Railroad, 118 Mo. App. 611. (3) It was reversible error to have permitted, over objection, witness Brady, who was neither qualified by training or observation so to do, to give his opinion on the speed of the car. Stotler v. Railroad, 200 Mo. 107. (4) Plaintiff's first instruction is erroneous. Theobald v. Transit Co., 195 Mo. 395; Gebhardt v. Transit Co., 97 Mo. App. 373. (5) The court erred in refusing defendant's third instruction because the charge that the car was being run at a reckless rate of speed was unproved and should, therefore, have been withdrawn from the jury. Campbell v. Railroad, 175 Mo. 161.

*A. R. Taylor* and *Howard Taylor* for respondent.

The third contention is that it was reversible error to allow the witness Brady to give an opinion as to the speed of the car. Brady, by his evidence, showed an unusual familiarity with the running of cars. For years he had been connected with the street department; had observed the running of cars daily, and had even timed the cars whilst running in blocks through the city. There are not many of the population of the city so well qualified to tell how fast the car was running. Stotler v. Railroad, 200 Mo. 107, cited by appellant, makes him well qualified to give an opinion. The fourth contention is that the first instruction given for the plaintiff was erroneous, because it required the motorman to keep a "vigilant watch," because it is contended

that the authorities (decisions) say that the "vigilant watch" only means ordinary care, and that the jury might have been misled. In other words, the instruction should have been "vigilant watch," otherwise ordinary care, or ordinary care, otherwise vigilant watch —tweedle dum or tweedle dee, or tweedle dee or tweedle dum. This is about the sum of this contention. Vigilant watch, under the circumstances, means ordinary care, because ordinary care means vigilant watch, say the critics. These words, "vigilant watch," when applied to the conduct of a motorman, mean the ordinary care of a motorman, and should be the words used. Schmidt v. Railroad, 149 Mo. 285.

STATEMENT.—Action for personal injuries resulting from a collision between a street car, operated by the defendant St. Louis Transit Company, and a steam roller, driven by plaintiff, as engineer. The petition charges common law and ordinance negligence and avers that on July 6, 1904, while plaintiff, then in the employ of the city of St. Louis and operating a steam roller on Twenty-second and Morgan streets was crossing defendant's track to the south, "defendant's servants in charge of their east-bound car on Morgan street, carelessly and without using any care to control or stop said car and prevent it colliding with said steam roller, and whilst running said car at a high and reckless speed, and in disregard of warnings to stop said car, caused and suffered said car to collide with said steam roller, whereby plaintiff was thrown from said roller and caused to fall and sustain permanent injury upon his right shoulder and the muscles and tendons thereof, and also upon his right leg and the muscles and tendons thereof, and also to injure his hearing, and to bruise and lacerate his head and face."

The petition also pleads what is known as the "vigilant watch" ordinance, requiring that the motorman on street cars should keep a vigilant watch for vehicles

on the track or moving towards it and that upon the first appearance of danger to such vehicles, the car should be stopped within the shortest time and space practicable under the circumstances. It is then charged that defendant's servants at the time of the collision failed to keep such vigilant watch and failed to so stop said car, which violation of the ordinance, it is charged, directly contributed to cause plaintiff's injury. The petition further avers that by his injuries so sustained plaintiff has suffered and will suffer great pain of body and mind, has been disabled from labor, has lost and will lose the earnings of his labor, has incurred and will incur large expenses for medical and surgical attention and nursing, all to his damage in the sum of $4499, for which sum he prays judgment.

The answer is a general denial, accompanied by the averment that the plaintiff's injuries, if any sustained, were caused by his own carelessness and negligence in attempting to drive a steam roller across the track immediately in front of a moving car. The reply was a general denial.

The suit was originally against the St. Louis Transit Company and United Railways Company, but on motion of plaintiff, an order was entered dismissing the suit against the United Railways Company.

On a trial before the court and jury, evidence was introduced tending to show the following facts: The plaintiff and other employees of the city had been engaged with the steam roller in question on the day mentioned, rolling macadam in the block north of Morgan street, between Morgan street and Franklin avenue. Having completed the work in that block, the roller, with its attending workmen, was proceeding south on Twenty-second street to roll the macadam in the block between Morgan street and Lucas avenue. It was a bright, clear, day and the time between 2 to 2:30 p. m.

Morgan street at that time was occupied by the defendant with a single track, located about the cen-

ter of the street, on which track defendant operated its street cars for the carriage of passengers eastbound on said street.

It was down grade, defendant's tracks approaching Twenty-second street from the west, as far as two or three blocks west from twenty-second street.

When the steam roller in charge of plaintiff, on its way south, reached Morgan street, the watchman or flagman for the city who attended the roller, and whose duty it was to watch at street crossing and see whether the way was clear for the passage of the roller over the crossing, signalled plaintiff to stop the roller to allow one of defendant's cars going east to pass. Plaintiff did stop the roller in obedience to the signal and allowed the car to pass east. There is much discrepancy in the evidence as to the distance from the track the stop was made. Witnesses for the plaintiff located the stop at about 10 to 15 feet from the track, while the evidence for the defendant located the stop at from 4 to 6 feet from the track.

After this car going east had passed the roller, the watchman, one Brady, went forward and signalled plaintiff to move on south across the car track. Brady testified that before doing so he looked west and that there was no car approaching from the west in sight; that when he looked again, which was as the wheels of the roller were going on the track, he saw a car coming east and that it was then in the middle of the block between Twenty-second and Twenty-third streets, about 200 feet away; that he immediately waved a signal to the car to stop; that the car did not stop, but ran down at a high speed and struck the wheel of the roller and knocked it off the track, with the rear end of the roller about 18 feet from the point of collision.

The roller weighed about 17 tons. It was constructed with two wheels in the rear about 8 feet high and with a small guide-wheel in front. The machine was of iron and about 16 feet long with rollers in front.

It was reversible, and could be moved with either end in front.

On the day of the accident, the roller was moving south along Twenty-second street to Morgan street, with the rear of the machine south and in front. After the signal was given to go ahead with the roller, that is, after the first car passed, the machine moved to and on to the track, with the end of the machine to which were fixed large wheels in front.

The machine while moving to and on to the track moved very slowly, "about half the speed of a slow walk of a man." There was evidence for plaintiff tending to show that the rear wheels going south got on the track and about to the south rail. The plaintiff and his witnesses testified that when the wheels of the roller were on the track and the street car then in the middle of the block, say 150 or 200 feet away, Brady, the watchman, waved his flag to stop the car, and the plaintiff and a workman on the roller both waved their hats and hands at the motorman to stop. He did not stop, but ran the car down and collided with the roller, knocking the roller to one side as before mentioned. That as a result of the collision the plaintiff was thrown from his place on the roller to near the southeast corner of the street, and sustained the injuries complained of.

There was evidence that the car was running at a speed of 25 miles an hour. The motorman, however, called as a witness by plaintiff, testified that the car was running 8 to 10 miles an hour. He also testified that he could stop the car in 50 or 60 feet under the circumstances, and that the car was equipped with air brakes, which were in good order. He further testified that he did not try to stop the car until it was within 40 feet of the roller, testifying that it was not until then that he realized there was danger of the collision; that he began to give an alarm by loud ring-

ing of the gong when the car was midway of the block, or about 150 to 200 feet away from the roller.

There was a conflict of evidence over the question of the extent of the injuries and damages sustained.

The evidence for the plaintiff, given by himself, was that prior to the injury he was a sound man in good health and strength. That he was a stationary engineer. Had been employed as such by the city of St. Louis to operate a steam roller for two seasons, running about eight months each, the one when injured being his third season. That his wages were from $3.50 to $4.00 per day. That since his injury, he is disabled in his limbs. That he had tried to work but owing to his disabilities, has been unable to work except light work and for short periods. That since his injury, July 6, 1904, to the date of the trial, April 27, 1908, he had been able to work, all told, as much as one year. That as a result of his injuries to his leg, he had to have four operations, cutting out the putrid matter that had formed in the wound. That his shoulder was so injured he couldn't lift any weight; cannot stand on his leg any length of time, because it hurts him all the time. Continues to suffer pain. The hearing of one ear is impaired and almost lost.

A physician who treated him for six weeks testified that plaintiff will never fully recover from his injuries, and that they are permanent. Another physician testified that the injuries are permanent. Plaintiff had incurred a doctor's bill of $50 to $75, and had paid out for medicines $100.

The court at the instance of plaintiff gave three instructions as follows:

"1. If the jury find from the evidence in this case that on the 6th day of July, 1904, the defendant was using and operating the railway and car mentioned in the evidence for the purpose of transporting persons for hire from one point to another in the city of St. Louis as a street railway company;

"And if the jury find from the evidence that Twenty-second street and Morgan street at the places mentioned in the evidence were open public streets within the city of St. Louis at said time;

"And if the jury find from the evidence that on said day the plaintiff was in the service of the city of St. Louis as engineer of the steam roller mentioned in the evidence; and if the jury find from the evidence that the plaintiff on said day 'was operating said steam roller going across Morgan street on Twenty-second street at the crossing of said streets and whilst doing so defendant's eastbound car, mentioned in the evidence, collided with said steam roller and injured the plaintiff on his shoulder, leg, head and face as mentioned in the evidence;

"And if the jury find from the evidence that defendant's motorman in charge of said car failed to keep a vigilant watch for vehicles on said track, or failed to exercise ordinary care to control or stop said car and avoid causing said car to collide with said steam roller, and that thereby said car was caused to collide with said steam roller and injure the plaintiff as mentioned in the evidence;

"And if the jury find from the evidence that the plaintiff was exercising ordinary care to look and listen for said car and avoid injury therefrom; then plaintiff is entitled to recover and the verdict should be for the plaintiff.

"2. If the jury find for the plaintiff they should assess his damages at such a sum as they believe from the evidence will be a fair compensation to him:

"First. For any pain of body or mind which the jury believe from the evidence he has suffered or will hereafter suffer by reason of said injuries and directly caused thereby.

"Second. For any loss of the earnings of his labor which the jury believe from the evidence he has sus-

tained or will hereafter sustain by reason of said injuries and directly caused thereby.

"Third. For any expenses necessarily incurred for medicines, medical or surgical attention to the reasonable value thereof, which the jury believe from the evidence the plaintiff has incurred by reason of said injuries and directly caused thereby.

"3. The court instructs the jury that by the words 'ordinary care' as used in the instructions is meant such care as a person of ordinary prudence would exercise under the same or similar circumstances."

At the instance of the defendant the court gave five instructions as follows:

"1. Even though the jury believe from the evidence in this case that the motorman in charge of the car failed to keep a vigilant watch and failed to stop the car in the shortest time and space possible after the roller was started towards the track into danger and that said car was being run at a negligent rate of speed, yet if you further believe from the evidence that the plaintiff ran the roller into danger of collision with said car when said car was so dangerously near as to render a collision unavoidable by the motorman while in the exercise of ordinary care in watching for the roller and in running and stopping said car the plaintiff is not entitled to recover and your verdict will be for the defendant.

"2. The court instructs the jury that if you believe from the evidence in this case that the collision and injuries complained of were the direct result of the mutual and concurring negligence of the plaintiff and the motorman in charge of the car, and that if it had not been for the joint negligence of plaintiff and the motorman, if you so find, the collision and injuries would not have occurred, then the plaintiff is not entitled to recover and your verdict will be for the defendant.

"3. The court instructs the jury that the law casts the burden upon the plaintiff to establish his case by a preponderance of the evidence, and the jury will return a verdict for defendant if the evidence is clearly balanced, or if it preponderates for defendant. While the preponderance of the evidence does not consist wholly in the greater number of witnesses testifying the one way or the other, yet the number of credible and disinterested witnesses testifying on the one side or the other of a disputed point in this case is a proper element for the jury to consider in determining where lies the preponderance of the evidence.

"4. The court instructs the jury that you are the sole judges of the weight and credibility of the evidence in this case. It is for you to determine on which side of the case the evidence preponderates and in fixing and determining the weight and credibility to be given the testimony of the several witnesses who have testified before you and all the evidence as a whole, you should look to the manner and demeanor of the witnesses while testifying; to their willingness or unwillingness to answer upon the one side or the other, if any; to their intelligence or the want of intelligence to whether or not any witness is interested in the case; to his feelings of prejudice or bias towards either party, if any; to his knowledge of and opportunities for knowing the facts to which he testifies; to the probability or improbability of the facts to which he testifies; to whether or not he has made contradictory statements either in court or out of court concerning the material facts involved in this case; and after considering all these things you should then fix and determine the weight and credibility to be given to the evidence of each and every witness testifying in the case and the evidence as a whole.

"In this connection you are further instructed that if you believe that any witness in this cause has wilfully sworn falsely to any material fact or facts in

issue, then you are at liberty to disregard all or any portion of the testimony of such witness.

"5. The court instructs the jury that if you believe from the evidence in this case that plaintiff drove the steam roller onto defendant's track, in such close proximity to the moving car, as to render it impossible for the motorman, while in the exercise of ordinary care, to stop the car and avoid the collision and injury to plaintiff, then the plaintiff is not entitled to recover and your verdict must be for the defendant."

The defendant also asked for an instruction for nonsuit, at the close of plaintiff's case and again at the close of the case, which the court refused to give. The court also refused six other instructions asked by defendant which are not necessary to be set out as the refusal to give defendant's instruction number 3, and the instructions for nonsuit are the only ones on which assignment of error is made in the brief filed. Defendant's refused instruction number 3 is as follows:

"The court instructs the jury that there is no evidence in this case that the defendant's motorman was running the car at a high and reckless speed and that charge of negligence in the petition is withdrawn from your consideration."

In the statement and brief of the appellant error is also assigned to the giving of plaintiff's instructions numbers 1 and 3.

There was a verdict for plaintiff for $2000, and after an unsuccessful motion for new trial, the case is brought here by appeal, exception having been duly saved to the action of the court in the admission and exclusion of testimony, to the giving and refusing of instructions and in overruling the motion for a new trial.

REYNOLDS, P. J. (after stating the facts).—We have read the evidence as abstracted by defendant's counsel, in connection with the assignments of error

relied on. These assigned errors are, (1) that there is no evidence in the record that the motorman could, by the exercise of ordinary care, have avoided the collision after the danger became apparent; (2) that there is no certain testimony of persons qualified to speak as to the rate of speed of the car; (3) that the verdict is the result of passion and prejudice; (4) that it was reversible error to have permitted, over objection, a witness, who was neither qualified either by training or by observation so to do, to give his opinion on the speed of the car; (5) that plaintiff's first instruction was erroneous, and, finally, that the court erred in refusing defendant's third instruction, because the charge that the car was being run at a reckless rate of speed was untrue and should therefore have been withdrawn from the jury.

As to the first point made, that there is no evidence in the record that the motorman could, by the exercise of ordinary care, have avoided the collision, after the danger became apparent, it is sufficient to say that there was evidence tending to support such a finding and that this assignment is not well taken.

Nor is the proposition that there is no certain testimony of persons qualified to speak as to the rate of speed of the car sustained by the record. While it is true that only one of the witnesses, Brady, testified to having previously timed cars running in the city, and that that witness testified that he had only done so on one occasion, his testimony, as well as that of the other witnesses, was to the effect that they were familiar with the running of cars in the city of St. Louis, and had frequently observed them, and they testified that their estimate of speed was based on their observations. The action of the trial court, in allowing the witness Brady to testify as to his estimate of the speed of the car, was within the sound discretion of the court on the evidence which was brought out as

142 App—45

to Brady's qualification and is not such an abuse of the discretion of the court as warrants interference by this court with that action. The action of the court in admitting this testimony, in no manner is in conflict with the ruling on that matter made in Stotler v. Railroad, 200 Mo. 107. On the contrary we think it was in line and in entire harmony with the law as there laid down.

We cannot say, in reviewing the testimony in the case, and considering the nature of the injuries to plaintiff and their extent and duration, that the verdict is the result of passion or prejudice. There is testimony to the effect that he had lost wages for nearly two years and that his daily wage, before the accident was $3.50. He was put to expense and he is entitled, over and above these items to compensation for his sufferings, as well as for the impairment of his earning capacity. In the light of this evidence, we cannot declare that this verdict is either excessive or that it shows evidence of passion or prejudice on the part of the jury. The second instruction given at the instance of plaintiff, correctly directed the jury as to the measure of damages and, in our opinion, the verdict is warranted by the testimony and responsive to that instruction.

Error is assigned to the giving of the first instruction at the instance of plaintiff. The particular error assigned to this instruction is the use of the expression, to the effect that if the jury found that the motorman failed "to keep a vigilant watch" for vehicles on the track, etc., plaintiff can recover. The contention is that the instruction should merely have required the motorman to exercise ordinary care in looking and watching for plaintiff. As we understand the decision of the Supreme Court in Schmidt v. St. Louis R. R. Co., 149 Mo. 269, there was no error in the use of the words, "vigilant watch," in this instruction, when taking the instruction in full, particularly

so, when considered in connection with the instruction as to ordinary care, as defined in plaintiff's third instruction.

Nor can we agree with the fifth proposition of the defendant that it was error to refuse the defendant's third instruction. There was evidence in the case as to the speed at which the car was running and much conflict of evidence as to that, but it cannot be said that the charge of a reckless rate of speed, was either unproved or had been abandoned by the plaintiff. Furthermore, this third instruction, as asked, was defective and would have been confusing, in that it failed to define to the jury what would have been considered a high and reckless rate of speed under the circumstances of the case.

On a review of all the evidence in the case and the instructions given, we find no error that warrants us in saying that the case should be reversed. Counsel for appellant vigorously and earnestly assail the credibility of the witnesses produced by plaintiff. In the fourth instruction given at the instance of defendant, the jury was fully and carefully instructed as to the credibility of the witnesses. That question was accurately placed before the jury. The witnesses were before the jury. The jury heard and saw them, and, with this cautionary instruction, it was for the jury to determine what weight to attach to their testimony. On consideration of the whole case we fail to discover in it any reversible error, and the judgment of the trial court is affirmed. All concur.